THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN CASH, Plaintiff in Error.

*Opinion filed April 20, 1927—Rehearing denied June 18, 1927.*

1. CRIMINAL LAW—*what statement is admissible as res gestæ.* In a prosecution for murder it is proper to admit evidence that the victim of the homicide said to her husband, who was with her at the time she was shot, "Daddy, they shot me," where the words were unpremeditated and so immediately accompanied the injury as to be a part of the event itself.

2. SAME—*what exhibits may be admitted in evidence in murder trial.* In a prosecution for murder it is proper to admit in evidence a portion of the windshield of the automobile in which the deceased was riding when she was shot, the windshield having been broken by one of the bullets from the defendant's pistol, where there is evidence that the exhibit was in the same condition as when taken from the car within three or four hours after the shooting; and the admission in evidence of a steel jacket of a bullet and some of the glass from the windshield picked up at the place of the homicide is not prejudicial, where the homicide is admitted.

3. SAME—*when instruction as to use of automobile as a deadly weapon is improper.* In a prosecution of a police officer for homicide committed when firing at an automobile which he claims was being driven with felonious intent to run over him, it is proper to refuse an instruction stating "that when an automobile is used in a manner likely to produce death or cause great bodily harm, that said automobile then and there becomes a deadly weapon," as an autombile may produce death or bodily injury when used innocently or negligently, and when so used it does not become a deadly weapon within the meaning of the criminal law.

4. SAME—*language used in an instruction, if proper, is not material.* The object of instructions is to inform the jury what are

the rules of law applicable to the facts of the case, and if the rules are accurately stated the precise language used is not material.

5. SAME—*party not entitled to instructions in his own language.* Instructions are the instructions of the court, and neither party has a right to have any instruction given in the exact words in which he has requested it or to have a rule announced in one instruction repeated in another instruction in the same or in different language.

6. SAME—*defendant is not entitled to instructions referring to prejudice of witnesses against him, only.* A defendant is not entitled to instructions referring to the prejudice of witnesses against him, only, and cautioning the jury to consider such prejudice in determining the credibility of the witnesses, as such caution should be against all witnesses animated by feelings, friendly or hostile, either towards the defendant or other persons interested in the prosecution or the defense.

7. SAME—*when instruction as to credibility of defendant's testimony is proper.* It is proper to instruct the jury that in determining the credibility of the defendant's testimony they must consider that he is the defendant and interested in the result of the suit and that they should give his testimony such weight as they believe from all the evidence it is entitled to, but such instruction should not conclude with the words "and no more," as they are superfluous.

8. SAME—*when error in giving instructions is sufficiently preserved for review.* Error in the giving of instructions for the People is sufficiently preserved for review where the abstract sets forth the instructions, shows a motion by the defendant for a new trial, (one reason assigned being that the court erred in giving each of the instructions offered by the People,) the overruling of the motion, an exception by the defendant and an assignment of error on the ruling; and it cannot be successfully contended that the instructions are not before the court because the defendant did not except to the giving of the instructions.

WRIT OF ERROR to the Circuit Court of Saline county; the Hon. A. E. SOMERS, Judge, presiding.

D. F. RUMSEY, CHARLES H. THOMPSON, and W. C. KANE, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, CHARLES T. FLOTA, State's Attorney, and MERRILL F. WEHMHOFF, for the People.

Per CURIAM : John Cash was indicted for murder, convicted of manslaughter, and prosecutes error on grounds of error in the admission and rejection of evidence and in the giving and refusing of instructions.

The homicide was admitted. It occurred on July 10, 1925. Mrs. Lottie Woolard had been riding in a Buick touring car during the early part of the evening of that day with her husband, a merchant in the city of Eldorado. A few minutes after ten o'clock they passed the Murray Hotel, on Fifth street. There is a conflict in the evidence as to their rate of speed and the manner of driving. The attention of the plaintiff in error, who was a policeman and deputy sheriff and was sitting in his car parked on Fifth street, in front of the hotel, was called to the car by a by-stander with whom he was conversing, saying, "Look there, Cash! Stop that car!" The plaintiff in error got out of his car, went out in the street and shouted, "Stop that car!" but the car passed him without slackening in speed and no attention was paid to his summons. The plaintiff in error discharged his pistol, a .45 automatic, three times. The first shot struck Mrs. Woolard, who was sitting in the front seat at the right of her husband, in the back of the neck at the hair line, just at the left of the second vertebra, and passed out just below the angle of the lower jaw on the right side, breaking the vertebra and severing some of the larger blood vessels. She fell over on her husband, saying, "Daddy, they shot me." The second shot went through the back curtain of the automobile two and a half inches to the right of the small oval glass in the center of the curtain and sixty-two inches from the ground and broke the upper windshield. Martin Awalt, a witness, testified that he heard it whistle past his house, 600 feet away. The course of the third shot was not indicated. There was a noticeable interval between the first two shots, but the third followed the second immediately. Woolard, with his right arm around his wife, drove with the other hand five or

six blocks, making two or three turns, to his daughter's, where, with the assistance of neighbors, he carried his wife into the house and laid her on a bed. She was dead.

Counsel for the plaintiff in error state that the theory of the defense was that he did not shoot at the car or at any person but at the pavement, hoping to stop the car, which was being driven along a busy street recklessly and in utter disregard of human life, and that had he shot at the car or the persons in it he would have been justified, inasmuch as he was attempting to make an arrest of a man who had committed a felony, the felony being an attempt by the driver of the car to run over and kill the plaintiff in error.

It is argued that it was error to admit in evidence Mrs. Woolard's words, "Daddy, they shot me," as she fell over on her husband's shoulder. The words were an unpremeditated statement immediately accompanying the injury and a part of the event itself and were properly admitted. (*Healy* v. *People,* 163 Ill. 372; *Bow* v. *People,* 160 id. 438; *Chicago West Division Railway Co.* v. *Becker,* 128 id. 545; *Lander* v. *People,* 104 id. 248.) The statement could not, in any event, be prejudicial to the plaintiff in error, for there is no contention that he did not fire the shot which caused Mrs. Woolard's death.

Objection was made to the admission of the windshield in evidence on the ground that for three hours in the night time, after the shooting, the car was standing in the street, and it is not shown that the windshield was in the same condition as immediately after the shooting. Woolard testified that he examined the car that night three or four hours after the shooting. He had the upper part of the windshield taken out and put it away. He did not see it taken out but saw it afterward. It was placed on a box in his basement, was covered up, had not been molested and was substantially in the same condition as when taken out. It was properly admitted in evidence.

John Hutton testified to finding a steel jacket from a bullet and some of the glass from the windshield the next morning on the pavement, about two feet from the east curb and about sixty feet from the place where Cash stood when he shot. His testimony and the articles which he picked up from the pavement were admitted in evidence over the objection that the testimony referred to a time too remote from the shooting and the articles were not sufficiently identified. There was evidence tending to show that the car, at the time the second shot was fired, was at about the place where the glass and jacket were found in the morning after the shooting occurred about an hour and a half before midnight. The evidence was not of great importance but the plaintiff in error was not prejudiced by its admission.

Ralph Choisser, a high school student sixteen years old, who was working in Weber's drug store in Eldorado that evening, testified that between 8:30 and 9:00 o'clock he sold Woolard a two-ounce bottle or a four-ounce bottle of Jamaica ginger. He was asked if he knew what per cent of Jamaica ginger was alcohol, but an objection was sustained to the question, as well as to another question asking what the label on the bottle said its contents were. The boy was not a pharmacist or chemist and said he did not examine, test or sample the Jamaica ginger; that he knew what ingredients were stamped on the bottle; that he did not notice exactly what was stamped on that bottle but on other bottles he had noticed. It is obvious that he did not know the contents of the bottle and not having read the label could not testify to its contents. It was not error to refuse to permit him to do so.

The plaintiff in error contended on the trial that Woolard was drunk and that he turned the car toward the plaintiff in error and attempted to run over him when he went out into the street and called to Woolard to stop. Several witnesses saw the automobile approach and pass the place

where plaintiff in error stood prior to and when he fired the shots, but no one testified to seeing the automobile turn toward the plaintiff in error except the plaintiff in error himself, who testified that when he commanded the driver of the automobile to stop, the automobile was turned toward him and driven rapidly, that he fell back to keep from being struck, that the automobile passed over the place where he had stood, and that he then shot in an attempt to stop the automobile. It is contended that plaintiff in error had the right to have his version,—that he shot to prevent the escape of a fleeing felon,—presented as a defense to the jury under proper instructions. The testimony offered by plaintiff in error was upon that theory of defense, and he was entitled to have proper instructions submitted upon that theory, if he saw fit to request them. This defense was the only possible one for the plaintiff in error under the evidence, and he asked three instructions on it, but they were all properly refused. The first was based on the hypothesis that Woolard willfully and maliciously attempted to run the automobile over the plaintiff in error with the intention of doing great bodily harm, and stated that in such case Woolard would be guilty of a felony. This is contrary to the statute, which declares an assault with intent to inflict a bodily injury to be a misdemeanor, only. Plaintiff in error failed to submit a proper instruction upon the defense that he shot to prevent the escape of a fleeing felon.

The second and third refused instructions were as follows:

2. "You are instructed that under the law of this State, if a felony is committed in the presence of a deputy sheriff or police officer that it is the duty of such deputy sheriff or police officer to arrest the party committing such felony, and, if it is necessary for him to do so in order to prevent the escape of such felon, such officer may kill such a felon.

3. "You are instructed that a police officer or deputy sheriff may use a deadly weapon, even to the extent of taking life, if necessary to effect the arrest of a felon."

The objection to them is that neither of them contains any definition of "felony" or "felon" and the terms are not defined elsewhere in the instructions given.

The fifth instruction stated "that when an automobile is used in a manner likely to produce death or cause great bodily harm, that said automobile then and there becomes a deadly weapon." The automobile may be, and frequently is, used innocently or negligently in such a manner as not only to be likely to produce death or bodily injury but as to actually produce one or the other without criminal liability on the part of the person using it, and therefore it cannot be said that by such use the automobile becomes a deadly weapon within the meaning of the criminal law.

In regard to instructions 4, 6 and 7, counsel say that they contained correct propositions of law in practically the same language as instructions 9, 10 and 15 given at the request of the People, and if it was proper to give these principles to the jury in instructions for the People the court should state the same principles to the jury in language prepared by the defendant. The object of instructions is to inform the jury what the rules of law applicable to the facts of the case are, and so long as those rules are accurately stated the precise language used is not material. The instructions are the instructions of the court, and neither party has a right to have any instruction given in the exact words in which he has requested it or to have a rule announced in one instruction repeated in another instruction in the same or in different language. The court may reject all instructions asked and instruct the jury in his own words, if he instructs them accurately in all the rules of law involved in the investigation about which instructions have been asked.

Instruction 8 stated that under the evidence the plaintiff in error was a police officer and had a right to carry a pistol, and the fact that he did so should not prejudice him in the minds of the jury; and instruction 9, that if the jury believed from the evidence that the plaintiff in error was a deputy sheriff, then he had a right to perform all the duties the sheriff was required or authorized to perform. While these were proper instructions, the jury were told in another instruction offered on behalf of plaintiff in error that it was not unlawful for a deputy sheriff or police officer to possess or carry fire-arms upon his person while on duty and in the discharge of his official duties as such officer. If the jury understood that it was not unlawful for plaintiff in error to carry fire-arms under the circumstances stated, they could not well draw any inference that it was improper for him to carry a weapon. Plaintiff in error was not prejudiced by the refusal to give the two instructions mentioned.

Instructions 10 and 11 were in reference to the testimony of witnesses animated by ill-will or prejudice against the defendant and directed the jury to take such feeling into consideration in determining the credit to be given to their testimony. They were properly refused because they referred to witnesses against the defendant, only, and to ill-will or prejudice against him, only. The caution should have been against all witnesses animated by feelings, hostile or friendly, either to the defendant or other persons interested in the prosecution or the defense.

Instruction 12 was a good instruction on reasonable doubt. Instruction 8 for the People defined reasonable doubt, which, with other instructions given for the People and the plaintiff in error, sufficiently stated the rule of law as to reasonable doubt and the sufficiency of proof, so that, even if the instruction could properly have been given, plaintiff in error was not prejudiced by its refusal.

Most of the seventeen instructions given for the People are objected to, among them instructions 1, 2, 5 and 6, which are in reference to murder and malice. Since the plaintiff in error was found not guilty of murder he was not prejudiced by these instructions.

Instruction 3 defined voluntary manslaughter, and instruction 4 involuntary manslaughter. The objection is made to instruction 3 that there was no evidence on which to base an instruction on voluntary manslaughter. The plaintiff in error testified that he went out in the street, shouted to Woolard to stop, that Woolard paid no attention to him but tried to run over him, and after escaping this danger the plaintiff in error fired the shot which the evidence showed killed Mrs. Woolard, and this was sufficient evidence on which to base the instruction. The objection to instruction 4 is that it purports to be in the language of section 145 of the Criminal Code but interpolates in the proviso the words "and does destroy the life of such human being," just before the last clause. The objection is well founded, but the words interpolated did not affect the meaning of the section and therefore did not prejudice the plaintiff in error.

Instruction 7 is as follows:

"The intention of a person committing an act may be inferred from all the evidence in the case, together with all the facts and circumstances surrounding the commission of such act. Every person is presumed by law to intend the reasonable and probable consequences of his own deliberate act, unless some other or different intention is proven, or appears from all the evidence in the case."

Consideration of the instruction with all the other given instructions as a series discloses that plaintiff in error was not prejudiced thereby.

Instruction 14 is in relation to the sole right of the jury to be the judges of the evidence, and states certain things which the jury have a right to take into consideration in

determining the weight and credibility which should be given to the testimony of each witness. It refers to the defendant as a witness, and it is criticised because it does not leave the jury free to give his testimony the weight and credit they may think it entitled to. The instruction states that in determining the weight to be given his testimony, the same tests, and only the same tests, should be applied as apply to the testimony of other witnesses, but that not only do they have the right, but it is their duty, to take into consideration also the fact that he is the defendant and is interested in the result of the suit, and the fact, if it is a fact, that his testimony has been contradicted or corroborated by other credible evidence or facts and circumstances in evidence, and the jury should give to his testimony such weight as they believe from all the evidence in the case it is entitled to and no more. No objection is made to instruction 14, but attention is called to the fact that it tells the jury they have the right to take into consideration certain things in weighing the testimony of witnesses, while instruction 13 says that in the case of the defendant not only do they have the right, but that it is their duty, to take into consideration certain other things. Instruction 13 includes in its introduction all the tests mentioned in instruction 14 and only the same tests, but it takes cognizance of the different relation to the case of defendant from that of any other witness and requires consideration of that difference by the jury. Instructions of the same kind have been given and approved in many cases. The concluding words, "and no more," should have been stricken from the instruction. The instruction stated proper tests to be applied in determining the weight to be given the plaintiff in error's testimony. The words "and no more," while precautionary, were superfluous. The error, if any, in the use of these words was, however, harmless.

Instruction 16 was on the right of self-defense of an officer if resisted in attempting to make an arrest of one

326—8

guilty of a misdemeanor, stating that if the person whose arrest is attempted, or any person acting in concert with him, makes no assault but merely seeks to escape arrest, the officer cannot lawfully take the life of such person to prevent his escape if he is guilty of a misdemeanor, only, and concluding that a misdemeanor is a violation of a law not punishable by imprisonment in the penitentiary, and a violation of any motor vehicle law is a misdemeanor, Under the evidence the instruction could not have been prejudicial to the plaintiff in error. The automobile had passed the plaintiff in error and was fifty or sixty feet away, moving from the plaintiff in error, at the time the first shot was fired. There was no claim of right to shoot to arrest Woolard for a misdemeanor.

Instruction 15 was as follows:

"An officer is entitled to the protection of the law in so far as he acts within the law, but if he kills another in violation of the law, and such killing is proven by the evidence to the satisfaction of the jury beyond a reasonable doubt, and in manner and form as charged in the indictment against him, then he ought to be convicted just the same as any private person. So, in this connection you are further instructed that if you find and believe from the evidence in this case that the defendant, John Cash, shot and killed the deceased, Lottie Woolard, willfully, unlawfully, feloniously and of his malice aforethought, and not in the necessary or apparently necessary defense of himself or another, and not in a sudden heat of passion as explained in these instructions, and not in the attempted arrest or apprehension of a felon, or to prevent the commission of a felony as explained in these instructions, then, and in such case he would be guilty of murder under the laws of this State, notwithstanding the fact that he was an officer at the time of such killing."

Various criticisms are made of this instruction. The first part of this instruction informs the jury that an offi-

cer is entitled to protection when acting within the law, but that if he kills another in violation of law, which fact is proved by evidence beyond a reasonable doubt, the jury should convict him the same as any private person. The instruction then proceeds to instruct the jury that if they believe from the evidence (without here stating that such belief should be beyond a reasonable doubt) that plaintiff in error killed Lottie Woolard willfully, unlawfully, feloniously and with malice aforethought, negativing different circumstances which would avail the plaintiff in error as good defenses, including that of the killing being done in the attempted arrest or apprehension of a felon or to prevent the commission of a felony, as explained in the instructions, then he would be guilty of murder. Among the defects in this instruction only two need be considered. In the latter part of the instruction, the requirement of proof beyond a reasonable doubt should not have been omitted. Other instructions did not, as stated, define felon or felony. While the instruction was defective in these respects and should not have been given, yet under the evidence no lesser verdict could have been returned.

The defendant in error argues that the plaintiff in error did not except to the giving of the People's instructions and they are not, therefore, before the court for review. The abstract shows a motion by the plaintiff in error for a new trial, one reason assigned being that the court erred in giving to the jury each of the instructions offered by the People, the overruling of the motion and exception by the defendant, and an assignment of error on the overruling of the motion. These things are sufficient to preserve for review the giving of the People's instructions.

The record is not free from error, but in view of the evidence the errors are not sufficient to reverse the judgment.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*