People of the State of Illinois, Plaintiff-Appellee, v.
Paul Helton, Defendant-Appellant.

Gen. No. 10,970.

Fourth District.

February 20, 1969.

Roger W. Thompson, Public Defender of Logan County, of Lincoln, for appellant.

Warren Peters, State's Attorney of Logan County, of Lincoln, and Everett B. Johnson, Assistant State's Attorney, for appellee.

CRAVEN, J., delivered the opinion of the court.

The defendant was convicted in a jury trial on the charge of rape. He was sentenced to the Illinois State Penitentiary for a term of not less than four nor more than twelve years. This appeal is from that conviction and sentence.

Initially, this appeal was filed in the Supreme Court, but certain constitutional issues sought to be raised were waived and thereafter this case was transferred to this court. In this appeal the defendant-appellant asserts that the evidence was insufficient to establish his guilt beyond a reasonable doubt, it being his contention that there was no showing that the act of intercourse was committed by force and against the will of the prosecuting witness. It is also asserted that the trial court committed error in refusing an instruction tendered by the defendant-appellant stating the law relating to force, resistance and consent and the refusal by the court to give any instruction as to force and against the will of the female. Other issues presented by this appeal relate to rulings on evidence.

From the inception of the trial of this case, the only issue for determination by the jury was whether the defendant had intercourse with the complaining witness, Cheryl Bellatti, forcibly and against her will or whether she consented to the act. The defendant testified on direct examination that he did have intercourse with her but that the act was with her consent. We deem it necessary to review only that portion of the evidence relating to the issue of consent.

On April 9, 1967, the prosecutrix was in the company of her brother Gerald, Mike Bryson, Jack Malone and the defendant. She had joined the four boys at their request that she go for a ride with them. She was induced to do so by a promise that she would be permitted to drive a car referred to throughout as belonging to

Paul Helton. The car, in fact, belonged to the defendant's brother.

The group drove out of the town of Mount Pulaski for some miles. The defendant relinquished the driver's seat to the prosecutrix and she did drive the car. Ultimately the group drove back to Mount Pulaski to a house or a shack described as a one-room house on the south side of town, in order that the defendant and his friends could get more beer thought to be located in the house. Jack Malone was then living in this house.

Upon arriving at the Malone residence the boys got out of the car but the prosecutrix said that she remained in the car and didn't get out until urged to do so. She joined the boys in the house and after some few minutes Malone, Bryson and her brother left the house, or at least went outside, leaving her and the defendant alone. She testified that all the boys except her brother had been and were drinking beer. According to the testimony of the prosecutrix nothing was said by anyone prior to the time the three boys left, but Malone, in his testimony, stated that he left with the other two at the suggestion of the defendant who asked that Malone take the car and drive around and come back in half an hour or forty-five minutes. The defendant gave Malone the keys to the car and Malone and the others left in the car.

The prosecutrix testified that while the defendant and she were alone in the house the defendant asked her to sit down in a chair and as she started to sit down he took her by the upper part of her arms, forced her down on the bed, removed her cut-off jeans and underwear, and committed the act of intercourse.

She further testified as to threats by the defendant to kill her if she didn't cooperate. According to her testimony, after the act, she got up from the bed, dressed herself, searched for and found her glasses, and then

233

left the premises and went to an area near the Mount Pulaski square where she had parked a family pickup truck, then went to a laundromat owned by her father which she and her brother were to have finished cleaning. They then went to a friend's house to pick up a trailer, and from there home. Her brother, who had been waiting for her at the truck, testified that she acted nervous and was crying. They arrived home at about 1:00 a. m. Upon arrival she told her parents what had happened and, at their request, was examined by a doctor the next day. The doctor testified that he conducted an examination of the prosecutrix. He found scratch marks about both sides of her neck, an abrasion resembling teeth marks near her left inner wrist, and his examination indicated that the prosecutrix had had sexual intercourse.

The defendant testified to essentially the same facts leading up to the arrival at the house. His version of the activities in the house was that after the three boys left he and the prosecutrix talked awhile; that he asked her to come and sit beside him on the bed. After some kissing and hugging he asked her to have intercourse and she agreed.

At the time of this occurrence the prosecutrix was an unmarried woman, 18 years of age. The defendant was 19. She was a senior in high school, was 5 ft., 8 in., in height and weighed about 115 pounds. The defendant was 6 ft., 1 in., tall and weighed about 160 pounds by his own testimony, although one witness indicated he believed his weight to be 180.

██ The defendant-appellant's main contention is that the State failed to prove the element of force beyond a reasonable doubt. He relies upon People v. Faulisi, 25 Ill2d 457, 185 NE2d 211 (1962), and People v. Rossililli, 24 Ill2d 341, 181 NE2d 114 (1962), for the proposition that in order to prove the charge of forcible rape there must be evidence to show that the act was com-

mitted by force and against the will of the female, and that if she has the use of her faculties and physical powers the evidence must show such resistance as will demonstrate that the act was against her will.

■ The State accepts that proposition as an accurate statement of the law but argues that the evidence here establishes the act to have been by force and against her will, or in any event that the question was one for the jury. We agree.

■ ■ An accusation of rape may be easily made, hard to prove and harder yet to defend by one ever so innocent. However, it is the function of the jury to weigh testimony, judge the credibility of witnesses and determine factual matters in debatable circumstances. This court cannot substitute its judgment for that of the jury or disturb its finding unless the proof is so unsatisfactory as to cause a reasonable doubt of the accused's guilt to appear. People v. Daily, 41 Ill2d 116, 242 NE2d 170 (1968), and cases there cited.

■ The jury here had to determine the issue of force or consent. The defendant tendered an instruction which reads as follows:

> "In order to prove the charge of rape there must be evidence to show that the act was committed by force and against the will of the female, and if she has the use of her faculties and physical powers, the evidence must show such resistance as will demonstrate that the act was against her will. Voluntary submission by the female, while she has the power to resist, no matter how reluctantly yielded, amounts to consent and removes from the act an essential element of the crime of rape."

The instruction was refused by the court. In refusing the instruction the court observed that "as to what amounts to consent, I think this is the sort of thing that is best left to argument." The court further ob-

235

served that the term "force and against her will" need not be defined to a jury.

Thus the determination was made to refuse the instruction both because of its form and for the further reason that no instruction on the issue of consent or definition of force was to be given. We believe the jury should have been instructed on this issue of the case.

In People v. Fryman, 4 Ill2d 224, 231, 122 NE2d 573, 577 (1954), the court observed:

> "A defendant is entitled to have the jury instructed not only as to the law applicable to the state of facts testified to but applicable to any state of facts which the jury might legitimately find from the evidence to have been proved, and a defendant is entitled to the benefit of any defense shown by the entire evidence. (People v. Cash, 326 Ill 104 [157 NE 76 (1927)]; People v. Scalisi, 324 Ill 131 [154 NE 715 (1926)].) The primary defense of the defendant Fryman, in this case, was consent of the prosecutrix. Although offered, no instruction as to the effect of consent or want of consent was given to the jury, except in the language of the statute, 'forcibly and against her will.' [Ill Rev Stat 1953, ch 38, sec 490.] (Parenthetical material supplied.) Certain of the instructions tendered in this regard, but refused, were in substantially the same language as a similar instruction which was given and approved in Sutton v. People, 145 Ill 279 [34 NE 420 (1893)]. It was indicated in that case that it was not necessary that the jury affirmatively believe from the evidence that the prosecutrix consented to the act in order to entitle the defendant to a verdict of not guilty, but it was the jury's duty to return a verdict of not guilty if they entertained a reasonable doubt on that subject, and the

236

defendant was entitled to an instruction to that effect."

In Fryman the court reversed and remanded for want of the proper instruction. We feel compelled to do so here.

In connection with the refused instruction, we note that the new Illinois Pattern Jury Instructions for criminal cases, which by the terms of Supreme Court Rule 451 (SHA, c 110A, § 451) are effective on and after January 1, 1969, include an instruction (9.02) defining the phrase "by force and against her will." The Committee Note indicates that the instruction is to be given in those cases where the defense is consent by a conscious and rational female. We believe the conclusion reached by the Committee to be in accord with the cases cited herein.

Although the suggested pattern criminal instructions were not available at the time of this trial, the suggested instruction is in accord with the mandate of the cases mentioned. Having concluded that there was error in refusing to instruct the jury in this case, it is not necessary that we consider the remaining evidentiary questions which, if error, are not likely to recur upon another trial. The judgment of the circuit court of Logan County is reversed and this cause is remanded to that court for a new trial.

Reversed and remanded.

TRAPP, P. J. and SMITH, J., concur.