(No. 43152.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* LARRY B. TAYLOR, Appellant.

*Opinion filed March 16, 1971.*

JAMES B. HADDAD, of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE and JAMES VELDMAN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

In a bench trial in the circuit court of Cook County, defendant, Larry B. Taylor, was convicted of the crime of rape and sentenced to the penitentiary for a term of not less than 8 nor more than 20 years. His conviction was affirmed by the appellate court (121 Ill. App. 2d 403) and

we granted his petition for leave to appeal. The critical issue involved is whether the admitted act of sexual intercourse was proved beyond a reasonable doubt to be forcible and against the will of the complaining witness.

The incident took place on the night of September 18, 1967, in Chicago. The complaining witness was 16 years of age at the time and a senior high school student. The defendant was 30 years of age and a college graduate. For purposes of contrast and better understanding we shall state the facts in chronological segments as they were related by both parties when they testified.

They met in the parking lot of a shopping center at about 8:45 P.M. as the complaining witness was walking to meet her boy friend who worked in a restaurant in the center. Defendant, on his way to a movie, drove up to her side and asked her name, where she was going and whether she lived in the neighborhood. She testified that after she answered these questions defendant said, "I have a gun and I want you to get in the car," that she thought he had a gun in the crook of his arm but she never actually saw it then nor at any time throughout the rest of the evening, that he told her to walk around the front of the car and get in, otherwise "he would shoot me," that she did what she was told, opened the door herself and got in the front seat; that he told her there was no need to scream or yell as no one would hear her, that lights were on in the stores and over the parking lot; that he made her sit on the floor with her head on the seat and then he drove off.

Defendant testified that after the complainant answered his preliminary questions he suggested that, maybe, she would like to take a ride, that she asked what he wanted to do and that when he said, "Just drive around," she said, "All right," and walked around the car, opened the door and got in. He stated that he did not have a gun, never owned one in his life and did not mention a gun to her or threaten her in any way, that he did suggest that she sit on

the floor, but only because she expressed concern about someone seeing her, that the parking lot was well lighted and a number of people were getting in and out of cars approximately 75 or 100 feet away.

In the ensuing 35 or 40 minute ride defendant testified they drove on well traveled streets and in heavy traffic at times, that they stopped for a number of stop signs with cars on both sides of them and that the complaining witness neither made nor attempted to make any outcry. They talked about religion, metaphysics and love, and that there was a great deal of conversation in which both of them took part. He told her he wanted to make love to her, "that he could teach her something about love," that she replied that he could not, because she knew enough already from her boy friend. To his question as to whether she was a virgin she made no reply but just smiled. In answer to her question he told her he was not married.

The complaining witness testified that, "We had a conversation going on between us the whole time." She remembered asking him for his definition of love, but did not remember what he said. She recalled that he asked her if she were a virgin to which she said she made no reply. She remembered the subject of metaphysics was discussed but she did not remember asking him to explain it. She acknowledged that they had stopped at stop signs and that she had made no effort to get out. She remembered he told her he wanted to make love to her and had asked her if her boy friend had ever done the same. She had no idea how long they drove.

The car was finally stopped on a one-lane dirt road in open land. Defendant testified that he kissed her for a minute or two, that abruptly she opened the door and ran 20 feet to the rear of the car, that she stopped and when he got out she was facing him, that he kissed her and with his arm around her waist led her back, that he did not drag or force her, that he entered on the passenger side of the car,

climbed over the gear shift to the driver's seat, that she followed him and closed the door. He then asked her to undress which she began to do with no objection, and when she had recoved her blouse and bra, he leaned over and kissed her and she told him not be in such a hurry. He asked her to get in the back seat, which she did, and there removed the rest of her clothes. When he finished undressing in the front seat he said they talked about her menstrual period and decided she would be in no danger of pregnancy. He said he then climbed in back, committed an act of oral copulation on her and she did the same to him, that they then had intercourse and that she engaged in the act readily, without resistance, and even adjusted her position to suit his comfort.

The complaining witness testified that when the car stopped and defendant told her to take off her clothes she opened the door and ran, that he came out, got her, and pulled her back to the car. She stated that he threatened to rip off her clothes if she did not take them off, that he "started to help me take my clothes off, but I told him no, and I took them off myself." She said that she went into the back seat, that he finished undressing in the front and then joined her, that there was no discussion about her menstrual cycle, that he engaged in oral copulation but she did not, and that then he had sexual intercourse with her. To a question as to whether she made an effort to throw him off she said, "I wouldn't know how to." As to whether she made any physical resistance, she replied, "No, I didn't know how to," adding that she had never had any training and that no one had told her what to do in such a situation.

On the way back the complaining witness stated that she was in the front seat with defendant, that he wanted her to put her head in his lap, that he grasped her neck "real tight" and made her perform an act of oral copulation on him, that this was while he was driving and that he would not let her stop and it went on "for a real long time." She

said she "probably" talked to defendant but she did not remember what was said. She stated they stopped at stop signs a couple of times but that she would not know any of the streets or whether they were well traveled. They finally stopped in an alley some distance from her home where she got out first and then he did. He told her that if she told her father she would probably be taken to the hospital and the police and it might be embarrassing. She admitted kissing him goodbye and that she guessed he kissed her back.

Defendant testified that on the way back she voluntarily put her head in his lap, that they stopped in a residential area for a few minutes where they kissed some and she performed an act of oral copulation on him, that they again talked a lot about religion and love, that she asked to be let out in the alley so she would not be seen, that she kissed him goodbye and waved to him as he left.

The complaining witness then started to walk and stopped at a fire station. A fireman testified that when she came in between 10:30 and 11:00 P.M. he asked her if he could help her. She said she wanted to use the phone. He then asked her if something was wrong. She replied that she wanted to call her father. As she proceeded to the telephone he noticed that she appeared a little nervous so he asked her again if he could help. She then came back from the telephone and told him she had been raped. The police were called and they took her home and then drove her and her mother to the hospital for an examination. It was stipulated that if the examining doctor were called he would testify to the presence of spermatazoa and also that he found no marks or bruises on the body of the complaining witness and that none of her clothing was torn.

Defendant first contends that the testimony of the fireman constituted prejudicial hearsay which should not have been admitted into evidence. The case of *People* v. *Damen*, 28 Ill.2d 464, discusses in detail the background and reasons for the admissibility of declarations of a complainant as an

exception to the hearsay rule either as spontaneous or unreflecting statements, or, in rape cases, as corroborative statements admitted to foreclose the assumption that a failure to speak out would in effect be evidence of the fact that nothing violent occurred. We held that to be admitted as a spontaneous statement it must not have been made as a result of questions, that to be admitted as corroborative it must have been made without inconsistent or unexplained delay and also not as a result of questions. In *Damen* the victim had been brutally assaulted and raped, but in her resistance she had succeeded in asking the telephone operator to call the police before the defendant had torn the phone from the wall and beat her over the head with it. When the police arrived and noted the shambles in the apartment and the bleeding and beaten victim they asked, "What happened?" We held her response to be a spontaneous declaration and that under the circumstances the single question, "What happened?" was insufficient to destroy its spontaneity.

In the case before us the girl did not immediately make any explanation or complaint to the fireman. The fireman asked if he could help her. She said she wanted to use the phone. Even in answer to his second question as to whether anything was wrong she still indicated nothing that could be deemed an uncontrolled and spontaneous utterance of outraged feelings as required by *Damen*. It was only after she had gone to the telephone and the fireman had persisted in his inquiry as to whether he could help that she told him she had been raped. We find that under these circumstances her statement was not admissible within the meaning of the exception to the hearsay rule either as a spontaneous declaration or for its corroborative value. It is our opinion that had the questions not been asked the statement would not have been made and that, therefore, it was error to admit said statement in evidence.

Defendant next contends that he was not proved guilty

beyond a reasonable doubt. He admits the act of sexual intercourse but argues that it was with the consent of the complaining witness and not forcible. The State contends that this question was for the determination of the trial court and that his finding that she submitted out of fear of great bodily harm was plausible and fully supported by the evidence.

The rules governing a determination of force in rape cases, and the review thereof, have been reiterated on a great number of occasions. As summarized in *People* v. *Faulisi*, 25 Ill.2d 457, we have held that reviewing courts are especially charged with the duty of carefully examining the evidence in rape cases, and it is the duty of the reviewing court not only to consider the evidence carefully but to reverse the judgment if the evidence is not sufficient to remove all reasonable doubt of the defendant's guilt and to create an abiding conviction that he is guilty of the crime charged. We stated further that the degree of force exerted by the defendant and the amount of resistance on the part of the complaining witness are matters that depend upon the facts of the particular case; that resistance is not necessary under circumstances where resistance would be futile and would endanger the life of the female as where the assailant is armed with a deadly weapon, and that proof of physical force is unnecessary if the prosecuting witness was paralyzed by fear or overcome by superior strength of her attacker; that it is, however, fundamental that in order to prove the charge of forcible rape there must be evidence to show that the act was committed by force and against the will of the female, and if she has the use of her faculties and physical powers, the evidence must show such resistance as will demonstrate that the act was against her will. See also *People* v. *DeFrates,* 33 Ill.2d 190, to the same effect and in which we held that the testimony of the prosecutrix was not sufficiently convincing to lead to an abiding conviction of guilt.

The State's case appears to rest upon the assumption

that the complaining witness's reactions throughout the entire episode were dictated by fear instilled in her from the moment she met the defendant and was allegedly threatened with a gun. But the facts, even considered from the girl's testimony alone, simply do not support this assumption. She admitted that she never did see a gun at any time and that she only thought he had one in the crook of his arm at the time he first spoke to her. She did not even mention the subject again either as to its presence or the thought of its being present during the next two or more hours that she was with the defendant. By her own statement she admitted that they had a conversation going on between them the whole time they were together, about religion, love and metaphysics. She specifically stated that she did not resist him at any time because she said she did not know how to. Yet, she was of the same size and weight as defendant. She never once mentioned that she was afraid of him or that he struck her or treated her roughly in any way. She said she ran from the car when he first proposed that she get undressed, but she did not run far and she let him lead her back and waited while he got back in the car before she followed him, all without any threats or roughness on his part. She voluntarily removed her clothing on request and expressed no fear at the time. She then submitted to him without a struggle of any kind, or apparently, even a protest. She said he forced her to commit an act of oral copulation on him, but, incredibly, she said that this was while he was driving and that it lasted a very long time. But even this mention of force was subsequent to the alleged rape. She admitted that when she finally left the car she stood waiting while he got out and then *she* kissed *him* goodbye, and she guessed he kissed her back. She had no bruises or marks on her and her clothes were intact. She never once mentioned that she cried or protested or that she made any effort to attract attention of others to her alleged predicament either in the parking lot or throughout the long rides and stops on the streets of Chicago.

These facts fall far short of proof that she was paralyzed by fear, or overcome by the superior strength of her attacker, or that resistance would be futile, or that her life would be endangered by an assailant armed with a deadly weapon. To the contrary they indicate that she freely submitted to the blandishments of a salesman selling his wares as intimated by the trial court in remarks prior to imposing sentence. In view of the disparity in ages between defendant and the complaining witness defendant's conduct was unquestionably most revolting and despicable. But force, not revulsion, is the essence of the crime of rape, and we have no alternative except to conclude that the evidence was wholly insufficient and unconvincing to lead to an abiding conviction of the guilt of defendant of the crime of forcible rape. We therefore find that a reasonable doubt of guilt exists which will not permit defendant's conviction to stand.

In our review of the record we have noted that defendant was indicted for two offenses, rape and deviate sexual assault. The appellate court in its judgment affirmed defendant's conviction of both offenses, apparently assuming that the trial court had entered such judgments. However, the record reveals that the trial court found defendant guilty only of the crime of rape and imposed sentence for that crime alone. No finding or judgment was entered by the trial court on the charge of deviate sexual assault and such charge is not before us on this appeal.

For the reasons stated the judgments of the appellate court and the circuit court of Cook County are reversed.

*Judgments reversed.*