THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT EUGENE HAYN, Defendant-Appellant.

(No. 13049;

Fourth District—January 22, 1976.

Robert I. Auler, of Auler Law Offices, of Urbana, and W. Robert Abramitis, Law Student, for appellant.

Richard J. Doyle, State's Attorney, of Danville (G. Michael Prall, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

Defendant Robert Eugene Hayn was charged by indictment in the Circuit Court of Vermilion County with the offense of rape. A jury found him guilty and, after entering judgment on the verdict, the court sentenced him to a term of imprisonment of 4 years to 4 years and 1 day. Defendant appeals from the judgment and sentence. We affirm.

At trial defendant and Karl Fottler, called as a witness by defendant, admitted that they had intercourse with the prosecutrix on the evening of July 23, 1972. At that time, she was 18 years old and they were both about one year older. Both men contend that she consented. A principal issue in the case is whether the evidence was sufficient for the jury to have determined that the State proved beyond a reasonable doubt that the intercourse occurred by force and against the will of prosecutrix. A

related issue involves the admissibility of the testimony of a State's witness, a girl friend of the complainant, concerning statements made to her by complainant shortly after the intercourse.

On the evening of July 23, 1972, defendant and Fottler drove in a van to the Village of Homer in Champaign County. Upon arrival they drove to a ballpark where they saw prosecutrix. The three had met several weeks before and Fottler had dated her once. At their invitation she got into the van to accompany them to get some beer. They drove north to Ogden and Penfield in Champaign County, where they obtained some beer, and then east to Armstrong in Vermilion County. There they stopped and defendant went inside a house to purchase a gun. The evidence is disputed as to subsequent events.

Prosecutrix testified that while defendant was out of the van, she and Fottler were sitting in front. He began kissing her and pushed her against the motor. She then got out of the vehicle and started walking down the road. Fottler followed her out, ran after her and caught up to her. The two walked around a corner together and as they were walking, defendant drove up in the van. She and Fottler got into the vehicle, he in back and she in front. Defendant then drove off. Fottler asked her to come back with him and took her hand and pulled her back. She conceded that he did not grasp her strongly and that this particular act left no bruises. She stated that she ended up on her back, however. Fottler then got on top of her and kissed her. She tried to push him off and asked defendant for help. Defendant refused saying that she was a "big girl now."

Fottler began to undo her belt, she hit him on the back with her fists and he hit her across the face and then put an arm across her neck. She had become scared and didn't hit anymore but put her knees up to try to stop him. Fottler pushed her legs apart and put his hand on her crotch. She screamed, whereupon defendant stopped the vehicle and came to Fottler's assistance, taking her shoes off while Fottler lay on top of her. Defendant then helped Fottler pull her pants off and held her ankles with his hands. As she struggled, they picked her up and threw her on the mattress. Fottler held an arm across her neck and then inserted his penis in her vagina.

She further testified that when Fottler eventually got off of her, Hayn entered by the side door, pushed her back, held her by the wrists and also had intercourse with her. She cried while this was going on. When defendant was through, Fottler came back, pushed her down, held her by her hair and had further intercourse with her. She stated that she was then too tired to make any resistance. After this act was completed,

Fottler apologized saying that he was drunk and didn't know what he was doing. He told her to put her clothes on and asked to see her the next night. She admitted that she said she would but said she did so because she was scared. The van then arrived at Homer and stopped at the Checker gas station.

The testimony of defendant and Fottler was generally consistent and was to the effect that complainant willingly submitted to both of them. They testified that she got in back of the van with Fottler and made no objection to his advances. Fottler testified that he originally got off of her because he was unable to get an erection. Both men testified that she then asked defendant to get into the back of the van with her and that he then had intercourse with her without her resistance or objection. They both also testified that Fottler had intercourse with her after Hayn was through.

A girl friend of prosecutrix testified that she saw the van stopped at the Checker gas station at about 10:30 p.m. that evening. She asked defendant where prosecutrix was and he answered that she was in the back of the van. As the girl friend entered the van, prosecutrix grabbed her arm and they got out. Prosecutrix was crying and her sailor tie was torn. She had difficulty walking and the girl friend had to help her into the station restroom. When they got into the restroom, the door was locked and the girl friend asked prosecutrix what had happened. Over defendant's objection, the girl friend was permitted to testify that prosecutrix said that she had been raped and when asked who did it, prosecutrix said, "both of them." Further conversation then ensued about what other people might think of the episode and whether pregnancy might result from the intercourse. The girl friend noticed that prosecutrix's zipper was broken and that she had tar on her back. Evidence had been introduced to show that there was tar on the floor of the back of the van. The prosecutrix's testimony concerning the occurrence at the station was consistent with that of the girl friend. The two girls, Fottler, and defendant all testified that defendant came to the restroom door and tried to talk to the girls but was told to go away.

The girls left the restroom after defendant and Fottler had driven off. The station operator noted that complainant had been crying, had a red and wet face and crumpled clothes and that her back looked like she had been thrown down. He further stated that she appeared to have been beaten. At his request, the girls were driven by another man to the girl friend's home. This man also noted that the prosecutrix's hair was disheveled and her clothes wrinkled. He asked what had happened but one of the girls told him, "never mind." The prosecutrix later went from

the girl friend's house to her own home. Her parents' testimony was that on her arrival she was crying and hysterical, held her throat and said that it hurt. They also testified that her hair was disheveled, her arms and shirt tarred and her blouse wringing wet with sweat.

Dr. Martin Koeck testified that he had examined prosecutrix at a hospital on July 23, 1972. She had puffiness around the central area of the face, significant swelling in the vaginal area, and the beginning of a black and blue state. There was some body fluid at the opening of the hymen and a small blood clot. There was no tear or cut in the hymen. Her upper arms and neck were red and the lower arms were red and there was the beginning of a bruise around the left elbow. The vulva was swelled to twice its size. He said that this was not normal after intercourse. There was scratches or scrapes on her back and redness on the upper thigh. By the next morning her back showed a great deal of black and blue. On the third day, she had difficulty in walking and complained of pain in her ankles. At the time of discharge, she still had considerable black and blue in the vaginal area and a great deal of swelling. On cross-examination the doctor stated that the swelling could be an aftermath of prolonged tight contact. The parties stipulated that sperm were present.

In support of defendant's contention that the evidence was insufficient to show that the intercourse with prosecutrix was by force and against her will, he relies heavily on the case of *People v. Taylor*, 48 Ill.2d 91, 268 N.E.2d 865. There, the victim had met the complainant in a parking lot. She testified that he told her that he had a gun and wanted her to get into his car. Because of the fear of the gun, she got in and at his command sat on the floor with her head on the front seat. They then drove around awhile discussing philosophy and love. She admitted that they stopped at a stop sign but she did not get out. Eventually they stopped on a dirt road and he told her to take her clothes off. She got out and started to run but he chased and caught her. Upon his threat to rip off her clothes, she took them off unassisted. They then had intercourse. She admitted to making no resistance but said she didn't know how to resist. He then drove her near her home where they kissed goodbye. Defendant testified that she consented. The court held the evidence to be insufficient to support a verdict of guilty.

Several other cases where the evidence was similarly held to be insufficient are also cited by defendant. In *People v. Bain*, 5 Ill.App.3d 632, 283 N.E.2d 701, the alleged rape occurred while the parties were on a date. The victim could not remember whether she took her clothes off voluntarily, admitted that she didn't kick or scream, smoked a cigarette with the defendant after the act, indicated to the defendant that she was will-

ing to stay longer when he asked if she was ready to leave and upon her return home made no timely complaint of being raped to her roommate. In *People v. Kepler,* 76 Ill.App.2d 135, 221 N.E.2d 801, complainant testified that she was raped by force in the front seat of a car. After the act, she made a date with the alleged assailant for the next night. She made prompt complaint of the alleged rape but, although the act took place in the confines of the front seat, she was not scratched or bruised and her clothes were not torn. In *People v. Sparling,* 83 Ill.App.2d 104, 226 N.E.2d 54, the alleged assailant and victim had dated for about a month. While parked on a country road, they had intercourse. The only evidence of force by the man or resistance by the woman was her testimony that "I just tried to stop him and he wouldn't." (83 Ill.App.2d 104, 106, 226 N.E.2d 54, 55.) Others gave the parties a ride home from where they were parked and the girl made no complaint. Later she fainted and was found to have a severe vaginal injury.

In *People v. Taylor,* 48 Ill.2d 91, 98, 268 N.E.2d 865, 868, the court stated that to sustain a conviction for rape where the victim has "use of her facilities and physical powers," the evidence must "show such resistance" on the part of the alleged victim "as will demonstrate that the act was against her will." In the instant case, prosecutrix testified that she hit Fottler and doubled up her legs. She further stated that she was in fear and screamed. Unlike in *Taylor* and *Sparling,* she said that her clothes were forcibly removed. Unlike in *Bain* and *Sparling* she made prompt complaint. Most importantly, the injuries she received here were far more severe than any of those received in cases cited by defendant except the unusual *Sparling* case. The testimony of Dr. Koeck fully supports prosecutrix's testimony of force by the men and her resistance. The evidence of redness in the neck and pain in the ankles was inconsistent with vigorous but consensual acts of intercourse.

■■ The instant case more resembles that of *People v. Sims,* 5 Ill.App.3d 727, 283 N.E.2d 906, where, as here, the victim accepted a ride in a car with two males. According to the girl's testimony, they drove her to a secluded area where defendant held her while the companion removed her clothing. Each then had intercourse with her. Although the defendant threatened to break her arm there was no evidence that she was struck or cut or her clothing torn. Similarly to the instant case, however, she had vaginal injury, a bruised elbow and soreness in the legs. In affirming the conviction, the court noted the isolated place where the acts occurred and the superior strength of two males against one female. Such was also the situation in the case under consideration. The evidence here was sufficient for the jury to find beyond a reasonable doubt that the intercourse occurred by force and against prosecutrix's will.

■■ The State's evidence that prosecutrix made prompt complaint that she had been raped by defendant is the testimony of the girl friend concerning the conversation in the restroom. This testimony was admitted over defendant's objection. He argues on appeal that its admission was reversible error. A thorough analysis of the admissibility of such statements by a rape victim is set forth in *People v. Damen*, 28 Ill.2d 464, 193 N.E.2d 25. There the court explained that hearsay complaints by an alleged rape victim are admissible if they meet the requirements of a spontaneous declaration or a corroborative statement. The court quoted from *People v. Poland*, 22 Ill.2d 175, 181, 174 N.E.2d 804, 807, in listing the following as factors necessary to qualify a victim's statement as a spontaneous declaration:

"(1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence." 28 Ill.2d 464, 471, 193 N.E.2d 25, 30.

*Damen* was a bizarre case where a husband was convicted of the rape of his wife by forcing her by beatings to have intercourse with two men whom he hired for that purpose. The wife eventually was able to phone a telephone operator and get her to summon police to the apartment where the acts took place. The opinion does not indicate the time span between the last rape and the arrival of the policeman but upon the policeman's arrival, the victim was bleeding from head, breast and back. The court held her statement to a policeman telling him what had occurred was properly admitted as a spontaneous declaration.

Defendant contends that prosecutrix's statement was not spontaneous because she had time to fabricate. On this point he again relies on *People v. Taylor*. After the victim there was discharged from defendant's car, she went into a fire station and asked to make a phone call. A fireman asked her what was wrong but she did not then tell him. When later asked by the fireman what was wrong she then told him she had been raped. The instant case is more like *Damen*, however, where the victim stated that she had been raped when first asked and where the victim appeared to be more emotionally upset and physically damaged. The opinion in *Damen* indicated that there is no express time limit within which the complaint must be made. Here the last act of intercourse was concluded shortly before arrival at Homer. Prosecutrix made her complaint as soon as the van arrived at Homer and she could get alone with her friend. Prosecutrix was still in a highly emotional state from the "startling" events of the evening and had little time to fabricate. The statement qualified as a spontaneous declaration.

■■ The opinion in *Damen* also notes that a complaint by a victim may be admitted as a corroborative statement. A rape victim would be naturally expected to make complaint. If no complaint is made, the inference might arise that no rape occurred. Evidence of the making of the complaint negates that inference. As stated in *Damen* a corroborative statement may be admitted even though it occurred too remotely to be a spontaneous declaration but if so, only the claim of rape but not the details of the occurrence or the name of the assailant may be shown. In the case before us, the statement named defendant as an assailant. In *People v. Jackson*, 3 Ill.App.3d 303, 279 N.E.2d 8, the court held it to be error to admit a corroborative statement naming the defendant as the rapist but ruled that the error was harmless because there was no dispute about the identity of the rapist. Likewise here there was no question of the identity of those having intercourse with prosecutrix. Even if the statement was admitted only for corroboration no reversible error occurred.

Defendant maintains that venue was not proved beyond a reasonable doubt. Prior to trial, he made a motion to dismiss on the ground that the venue was improper. The motion was denied because a similar prosecution in Champaign County had been dismissed on defendant's motion after the State's attorney there had made a statement that Champaign County was not the proper venue. The State contends that the Champaign County motion estops defendant from raising the issue here. Defendant contends that the Champaign County Public Defender, representing defendant in the former action, had no authority to make a motion waiving his client's right to trial in Champaign County.

■■ We need not decide whether the ruling on the motion to dismiss was correct because the evidence on trial was sufficient for the jury to have found beyond a reasonable doubt that the offense occurred in Vermilion County. Defendant testified that he drove west from Armstrong to Route 49, south on that road to near Interstate 74 and then turned west into Champaign County and stopped before Fottler's first act of intercourse on an east-west road just east of the road extending straight north from Ogden. He and Fottler identified by photograph a place on such a road where they thought the van was stopped. Fottler testified that the van entered Ogden from a road coming from the north. The prosecutrix was not as familiar with the territory as defendant. She said that the van went south from Armstrong on the Armstrong slab and made an easterly jog and then went south. State's Exhibit 10, a map, indicates a road south of Armstrong that does just that. Fottler also testified that they drove south from Armstrong on a road that made a little jog.

In direct conflict with defendant and Fottler, prosecutrix testified that the van entered Ogden after coming from the east on Interstate 74. If this was true, the vehicle could not have entered Interstate 74 west of its intersection with Route 49. That intersection is shown by State's Exhibit 10. During the trip from Armstrong to Ogden, the vehicle could not have gone into Champaign County unless it was also driven back to the east for a distance of at least 2 miles. No witness testified that this occurred. The jury could have believed the testimony of the prosecutrix and if they did, could have concluded beyond a reasonable doubt that wherever the van stopped and the intercourse occurred, it happened in Vermilion County.

■■ Defendant tendered and the court refused an instruction which stated:

> "In order to prove the charge of forcible rape, the State must prove beyond a reasonable doubt, that the act of intercourse was performed forcibly and against the will of the female, and if she has the use of her facilities and physical powers, the evidence must show such resistance as will demonstrate that the act was against her will.
>
> Voluntary submission by the female, while she has power to resist, no matter how reluctantly yielded, amounts to consent and removes from the act an essential element of the crime of forcible rape."

In *People v. Helton*, 106 Ill.App.2d 231, 245 N.E.2d 1, also a rape case where the question of consent was involved, the defendant had tendered an instruction similar to the one offered here. No other instruction defining the phrase "force and against her will" was given. On appeal, this court noted that Illinois Pattern Instructions—Criminal, which had become effective by the time of the appeal, recommended that such an instruction be given and included an instruction which defined the phrase. This court therefore reversed. In the instant case, the instruction referred to in *Helton*, IPI—Criminal 9.02 was given. That instruction stated:

> "When I use the words 'by force against her will' I mean that under the circumstances the female did not voluntarily consent to sexual intercourse."

In *People v. Jones*, 28 Ill.App.3d 896, 329 N.E.2d 855, the appellate court for the fifth district stated that IPI—Criminal 9.02 was a proper statement of the law. No case has held otherwise. In *People v. Springs*, 51 Ill.2d 418, 283 N.E.2d 225, the Supreme Court held that it was not plain error to give IPI—Criminal 9.02 and not error to refuse a tendered in-

struction that would have further defined the terms "consent" and "resistance." The court stated that although the use of terms "voluntary" and "consent" together in IPI—Criminal 9.02 was somewhat redundant, there was no error in the instruction. Defendant contends that in *People v. Jones,* 6 Ill.App.3d 669, 286 N.E.2d 87, the court indicated that had the defendants there tendered an instruction further defining the terms in IPI—Criminal 9.02, it might have been desirable to give it. A reading of the opinion of that case when appealed to the Supreme Court, *People v. Jones,* 60 Ill.2d 300, 325 N.E.2d 801, indicates that defendants there were not requesting an instruction defining consent

■■ Defendant argues that the evidence of resistance by prosecutrix was not strong and, in view of the lack of evidence of threats to do great bodily harm to her, he is entitled to an instruction that if she yielded reluctantly while still having power to resist, she consented. We disagree and believe that the drafters of IPI—Criminal made a conscious decision to refrain from giving this argumentative type of definition. As stated in *People v. Jones,* 28 Ill.App.3d 896, 899, 329 N.E.2d 855, 858, "* * * there is no definite standard for determining the amount of resistance required." Were a definition in such detail of the terms "consent" or "by force and against her will," to be given, the factors of superior strength of the alleged assailants (*Taylor, Sims*) and the isolated nature of the place where the act took place (*Sims*) would also have to be incorporated to make the definition relevant to the facts of the instant case.

The refusal of defendant's tendered instruction in question was not error.

■■■ Two other errors are claimed by defendant. The prosecutor asked a number of leading questions with reference to whether prosecutrix was afraid of the gun which defendant purchased at Armstrong and which was then taken into the van. Where, as here, the court sustains objection to leading question ordinarily no reversible error occurs. (*People v. Wilson,* 51 Ill.2d 302, 281 N.E.2d 626.) In *People v. Polenik,* 407 Ill. 337, 95 N.E.2d 414, repeatedly asked prejudicial questions upon which objection was sustained, coupled with prejudicial closing argument, was held to be ground for reversal. The impropriety of questions here did not meet that magnitude. Defendant also contends that a finding in a separate trial that Fottler was not guilty raises a reasonable doubt of defendant's guilt here. Even when the defendants are tried together, however, such is the case only when the evidence against both defendants is identical in all respects. (*People v. Stock,* 56 Ill.2d 461, 309 N.E.2d 19.) The record here does not show what the evidence was in Fottler's trial.

We note that the sentence imposed of 4 years to 4 years and 1 day is

not an indeterminate sentence as required by section 5—8—1(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(a)). (*People v. Viser*, 62 Ill.2d 568; *People v. Harper*, 50 Ill.2d 296, 278 N.E.2d 771.) Defendant does not challenge the sentence, however, and if objection were made the sentence could not be corrected because rape is a Class 1 Felony, for which the minimum term of imprisonment cannot be less than 4 years (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(b)) and the maximum term once imposed could not, under the circumstances of this case, be increased if resentencing were ordered. Ill. Rev. Stat. 1973, ch. 38, par. 1005—5—4.

Finding no reversible error to have occurred, we affirm the judgments of conviction and sentence.

Affirmed.

CRAVEN, P. J., and SIMKINS, J., concur.