THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DWAYNE RAMSEY, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES CUNNINGHAM, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KIM POKE, Defendant-Appellant.

Fourth District   Nos. 4—85—0814, 4—85—0815, 4—85—0816 cons.

Opinion filed July 10, 1986.—Rehearing denied September 19, 1986.

Jeffrey K. Clapper, of Clapper & Clapper, of Danville, for appellant Dwayne Ramsey.

Kennith W. Blan, Jr., of Blan Law Office, of Danville (Leslie Kvale Ross, of counsel), for appellant Charles Cunningham.

Thomas B. Meyer, of Acton, Meyer, Smith, Miller & Anderson, of Danville, for appellant Kim Poke.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Defendants were charged with two counts of aggravated criminal sexual assault (Ill. Rev. Stat., 1984 Supp., ch. 38, pars. 12—14(a)(1),

(3)), and one count of criminal sexual assault (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—13(a)(1)). After a bench trial, defendants were convicted of each count. The trial court found the criminal-sexual-assault convictions merged into the aggravated-criminal-sexual-assault convictions. Therefore, it sentenced defendants on the aggravated-criminal-sexual-assault convictions.

Defendants appeal, arguing that the location of the offense was not proved beyond a reasonable doubt, that the evidence was insufficient to establish aggravated criminal sexual assault, and that they were deprived of due process by the prosecution's failure to have fingernail scrapings analyzed. Defendants, Charles Cunningham and Kim Poke, argue that the trial court erred in admitting into evidence a rifle found in Cunningham's vehicle. Defendant, Dwayne Ramsey, argues the trial court abused its discretion in sentencing him.

We affirm.

On April 2, 1985, complainant lived on East Johnson Street in Danville. Complainant testified that as she was talking on the telephone that evening, Ramsey knocked on her door, entered the house, and asked to speak with her. He left after she refused to talk with him and told him that she did not want any further contact with him. She had met Ramsey on New Year's Eve of 1982 and had engaged in sexual relations with him for approximately 11 months. The relationship ended prior to 1985. Complainant testified that she had never dated Poke or Cunningham.

After Ramsey left, Debbie Cox, a friend who was visiting complainant, asked complainant to walk her home. As she and Cox were walking toward Bowman Street, complainant stated, Ramsey again approached and asked why she had refused to accompany him. She told Ramsey she did not want to see him again and was getting married soon. Ramsey stated that she would not marry. Ramsey followed complainant as she was walking home alone. She again refused to accompany him.

Complainant further testified that at this point Poke and Cunningham got in front of her on the sidewalk. Cunningham's car was parked on a side street. Cunningham asked Ramsey whether complainant was going to come with them. Ramsey replied that she did not want to do so but was going to accompany them. Complainant ran; however, Ramsey caught her, and he and Cunningham forced her onto the backseat of the car. Ramsey lay on top of complainant. Cunningham drove. While the car was moving, Ramsey threatened complainant, attempted to disrobe her, and told her that if she failed to cooperate, Cunningham and Poke would also have intercourse with

her. Complainant stated that she continued to scratch and struggle with Ramsey. She could not tell in which direction the car traveled, but the journey lasted 10 to 15 minutes. Complainant could see a well-lit area through the rear window of the car.

After Ramsey removed her clothing, he noted that complainant was menstruating and asked the others about continuing. Cunningham indicated defendants should have intercourse with complainant. Because complainant was still struggling and scratching Ramsey, he told Cunningham to get the shotgun out of the trunk and threatened to kill complainant. Cunningham went to the back of the car. However, complainant did not see a shotgun. Once Ramsey had penetrated complainant's vagina, he held her until Cunningham was ready. She removed her sanitary napkin and pushed it behind the seat. After Cunningham penetrated her vagina, he held her down until Poke was ready. However, due to her struggles, Poke was unable to penetrate her vagina. She bit Poke on the arm, kicked, and scratched him. Poke was wearing a coat. After Poke was finished, he held her until Ramsey returned. Ramsey penetrated her vagina again and told her that he would not permit her marriage. Ramsey suggested that they strip complainant and make her walk home or take her to Champaign or Indianapolis. Cunningham responded that either city sounded good. Ramsey stated that they could simply use the shotgun and kill her.

After complainant promised not to report the incident, defendants returned complainant to Johnson Street. Ramsey lay on top of her during the return journey which lasted 10 minutes. The vehicle traveled on Bowman Street and turned onto Johnson Street. Complainant left a belt, sanitary napkin, and cigarette lighter in the car. Soon after arriving home, complainant called a crisis center and reported the incident. The police took her to the hospital.

The trial court sustained defendant's objection to the prosecutor's question about whether all of the activities had taken place in Vermilion County. However, the court allowed additional examination as long as the questions were nonleading. Complainant then testified that Cunningham's car was parked on Johnson Street facing away from Bowman. After the car started moving, it turned into an alley, traveling to Harrison Street. While on Harrison Street, the car traveled away from Bowman and to Collett Street, where it turned right. The car then traveled on Collett Street for 10 minutes. The court overruled defendants' objections to the speculative nature of the testimony, noting that complainant was subject to cross-examination.

Cox corroborated complainant's account of Ramsey's initial contact with complainant. Dr. Edward Ortiz examined complainant on

April 2. He noted several small abrasions on her left wrist and a 4-inch long abrasion on her left thigh. There was no evidence of laceration, abrasions, significant tenderness, or swelling of the vaginal or rectal area. Christine Holland, a registered nurse, stated that complainant appeared neat as opposed to disheveled. Barb Thornton, who had known complainant for several years and who worked at a women's crisis center, talked to complainant at the hospital on April 2. Complainant recounted the incident and did not act in her usual manner.

The police recovered a blue belt and sanitary napkin from the backseat of Cunningham's car. A loaded rifle was recovered from the trunk. Phillip Sallee, a forensic serologist, testified that he analyzed samples sent to him by the police. The parties stipulated to his qualifications and to the report of his findings. Sallee found seminal material, containing A, B, and O activity in complainant's vaginal swab. He could not state that the A and B matter came from the same person. The report stated the seminal fluid from the vaginal swab and extracted from complainant's jeans could have come from all three defendants. However, neither Cunningham or Poke individually could account for all of the A, B, and O activity present. The material extracted from complainant's underwear could have come from Poke. Pubic hair consistent with Cunningham's was found on complainant's clothing. A pubic hair similar to Poke's hair was recovered from complainant's pubic combings. A pubic hair similar to complainant's pubic hair was found in Ramsey's pubic combings.

Sallee further testified that he did not examine complainant's jacket or the fingernail scrapings at the police department's direction. He noted that he is not qualified to examine or identify human skin and did not believe the expertise was available at the Springfield laboratory.

Defendants did not present any evidence.

■ Initially, the defendants argue that the evidence fails to establish the location of the offense; thus, necessitates reversal. An allegation that a crime was committed in a particular county is a material element which must be proved beyond a reasonable doubt to sustain a conviction. (*People v. Pride* (1959), 16 Ill. 2d 82, 156 N.E.2d 551; *People v. McClain* (1978), 60 Ill. App. 3d 320, 376 N.E.2d 774.) However, the location of the offense may be established by circumstantial evidence. (*People v. Owens* (1981), 99 Ill. App. 3d 730, 425 N.E.2d 527; *People v. Hayn* (1976), 34 Ill. App. 3d 1029, 341 N.E.2d 182.) Whether the evidence sufficiently establishes the location of the offense is a fact question. (*People v. Smith* (1980), 91 Ill. App. 3d 242,

414 N.E.2d 751.) The location of the offense is proved by circumstantial evidence where the only rational conclusion to be drawn from the evidence as a whole is that the offense took place in the county alleged. *People v. Toellen* (1978), 66 Ill. App. 3d 967, 384 N.E.2d 480.

■ Here, complainant admitted that she did not see the direction the vehicle traveled after defendants forced her into the car. On appeal, defendants argue that in 10 to 15 minutes they could have driven to Champaign County or into Indiana. Complainant's description of the direction of travel, however, would have placed defendants' vehicle traveling north, away from the interstate, the State border, and parallel with the Champaign county line. The court could have concluded from the timing of the incident and the direction of travel that venue was proved beyond a reasonable doubt. *People v. Hayn* (1976), 34 Ill. App. 3d 1029, 341 N.E.2d 182.

The trial court specifically relied upon *People v. Taylor* (1970), 121 Ill. App. 2d 403, 257 N.E.2d 524, *rev'd on other grounds* (1971), 48 Ill. 2d 91, 268 N.E.2d 865, and *People v. Barksdale* (1974), 24 Ill. App. 3d 489, 321 N.E.2d 489. Both cases present strikingly similar situations and were properly relied upon.

Additionally, we find that section 1—6(f) of the Criminal Code of 1961 applies in the instant case. Section 1—6(f) of the Criminal Code of 1961 states:

"If an offense is committed upon any railroad car, vehicle, watercraft or aircraft passing within this State, and it cannot readily be determined in which county the offense was committed, the offender may be tried in any county through which such railroad car, vehicle, watercraft or aircraft has passed." (Ill. Rev. Stat. 1985, ch. 38, par. 1—6(f).)

The offense in the instant case took place in Cunningham's car while the car was traveling within the State. See *People v. Frank* (1981), 98 Ill. App. 3d 388, 394-95, 424 N.E.2d 799, 803-04; *State v. Lovelace* (1980), 227 Kan. 348, 607 P.2d 49; *State v. Tiff* (1977), 199 Neb. 519, 260 N.W.2d 296; *People v. Caplandies* (1977), 57 A.D.2d 971, 394 N.Y.S.2d 96.

■ Defendants were found guilty of two counts of aggravated criminal sexual assault based upon sections 12—14(a)(1) and (3) of the Criminal Code of 1961. Defendants argue that the evidence did not establish the commission of aggravated criminal sexual assault because complainant did not see a weapon and her account of resistance and threats was uncorroborated. The record belies defendants' contentions. Section 12—14 of the Criminal Code of 1961 states:

"(a) The accused commits aggravated criminal sexual assault

if he or she commits criminal sexual assault and any of the following aggravating circumstances existed during the commission of the offense;

(1) the accused displayed, threatened to use, or used a dangerous weapon or any object fashioned or utilized in such a manner as to lead the victim under the circumstances reasonably to believe it to be a dangerous weapon; or
\* \* \*

(3) the accused acted in such a manner as to threaten or endanger the life of the victim or any other person; \* \* \*." Ill. Rev. Stat., 1984 Supp., ch. 38, pars. 12—14(a)(1), (a)(3).

If the complaining witness' testimony is clear and convincing or independently corroborated, a reviewing court will not set aside a finding of guilty unless the evidence is so palpably contrary to the finding or improbable that it creates a reasonable doubt as to the accused's guilt. (*People v. Morgan* (1986), 112 Ill. 2d 111, 136.) Here, complainant's testimony was clear and convincing and corroborated. Complainant testified that Ramsey threatened to "blow her head off" on two occasions if she continued to resist. He told Cunningham to retrieve the shotgun from the trunk. Later that evening, the police seized a loaded rifle from the trunk of Cunningham's car. Ramsey penetrated complainant's vagina; then, Cunningham penetrated her vagina, and Poke unsuccessfully attempted to penetrate her vagina. Ramsey returned to the backseat of the car and penetrated complainant's vagina a second time. Results of tests completed later that night confirmed that intercourse had occurred.

We note that section 12—14(a)(1) specifies that the accused need only threaten to use a dangerous weapon under circumstances which would reasonably lead the victim to believe that the object was a dangerous weapon. Such circumstances existed here. The fact that the police later located a weapon corroborates complainant's statement. The method of the assaults plus the fact that Ramsey threatened to strip complainant, beat her, and force her to walk home established that defendants acted in a manner such as to threaten complainant's life under section 12—14(a)(3). Multiple acts of penetration occurred. Cunningham and Poke as participants in the offense are accountable for Ramsey's threats. Ill. Rev. Stat. 1983, ch. 38, par. 5—2.

■ Defendants next argue that the State violated Supreme Court Rule 412(c) (87 Ill. 2d R. 412(c)) and principles set forth in *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, when police investigators instructed Sallee not to examine complainant's fingernail scrapings. Defendants maintain the scrapings were the only

evidence corroborative of complainant's account of her struggles. They argue that test results could have influenced the court's assessment of complainant's credibility. A claim of prejudice must be founded upon more than speculation. (*People v. Lewis* (1975), 60 Ill. 2d 152, 330 N.E.2d 857; *People v. Velez* (1984), 123 Ill. App. 3d 210, 462 N.E.2d 746; *People v. Goka* (1983), 119 Ill. App. 3d 1024, 458 N.E.2d 26.) Here, complainant testified she scratched the defendant; however, all were wearing jackets. Sallee stated that he did not have the expertise to analyze tissue fragments. The court noted that complainant's testimony was clear, convincing, and corroborated. Given the instant circumstances, we find no showing of prejudice.

Additionally, defendants knew that the fingernail scrapings had been taken and knew that they had not been analyzed. They could have requested testing at any time but did not. They should not now be granted a new trial by arguing that the evidence was suppressed. (*People v. Smith* (1970), 46 Ill. 2d 430, 263 N.E.2d 860, *cert. denied* (1971), 402 U.S. 1009, 29 L. Ed. 2d 431, 91 S. Ct. 2193; *People v. Hudson* (1968), 38 Ill. 2d 616, 233 N.E.2d 403.) We find the People complied with the requirements of Rule 412(c).

Cunningham and Poke argue the court erred in admitting into evidence a rifle found in the trunk of Cunningham's car. They argue the weapon was not connected with the offense and complainant never saw it. The argument has little merit. A weapon is admissible if it is relevant. It is relevant if there is evidence to connect it with the accused and with the offense. (*People v. Jones* (1961), 22 Ill. 2d 592, 177 N.E.2d 112.) Where there is evidence indicating that an accused possessed a weapon at the time of the offense, a similar weapon connected with the defendant by its presence in the area at the time of his arrest may be admitted in evidence, even though not identified as the actual weapon used during the offense. (*People v. De La Fuente* (1981), 92 Ill. App. 3d 525, 531-32, 414 N.E.2d 1355, 1360-61.) The fact that the victim is mistaken about the type of weapon affects the weight of the evidence. (92 Ill. App. 3d 525, 414 N.E.2d 1355.) If multiple persons participate in an offense, the weapon may be admitted against all. *People v. McClinton* (1978), 59 Ill. App. 3d 168, 375 N.E.2d 1342.

Here, the complainant testified that Ramsey threatened to use a shotgun and kill her. He sent Cunningham back to the trunk of the car to retrieve the weapon. Less than 24 hours later, the police retrieved a loaded .22-caliber rifle from the trunk. No error occurred in admitting the rifle.

Ramsey argues the court abused its discretion in sentencing

him to 25 years' imprisonment. All defendants had similar criminal records. The court sentenced Poke to 8 years' imprisonment and Cunningham to 17 years' imprisonment. An arbitrary and unreasonable disparity between the sentences of similarly situated codefendants is impermissible. (*People v. Godinez* (1982), 91 Ill. 2d 47, 434 N.E.2d 1121.) However, similarity in sentencing is not required for all participants in a criminal act. (*People v. Olmos* (1979), 77 Ill. App. 3d 287, 395 N.E.2d 968.) A disparate sentence may be justified by differences in the nature and extent of the concerned defendant's participation in the offense or by differences in criminal records. (*People v. Wilkerson* (1984), 123 Ill. App. 3d 527, 537-38, 463 N.E.2d 139, 147-48.) Here, the disparate sentence was justified by Ramsey's greater participation in the offense. The court did not abuse its discretion in sentencing.

For the above reasons, we affirm the trial court.

Affirmed.

GREEN and MORTHLAND, JJ., concur.