THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
CHARLES P. CUNNINGHAM, Defendant-Appellee.

Fourth District   No. 4—89—0010

Opinion filed December 5, 1989.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel D. Yuhas and Timothy M. Gabrielsen, both of State Appellate Defender's Office, of Springfield, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

After a bench trial, defendant was convicted of two counts of aggravated criminal sexual assault and one count of criminal sexual assault. This court affirmed the convictions and sentence on direct appeal. (*People v. Ramsey* (1986), 147 Ill. App. 3d 1084, 496 N.E.2d 1054.) Defendant filed a post-conviction petition alleging ineffective assistance of trial counsel. The post-conviction court found trial counsel was ineffective and granted the petition. The State appeals, arguing the post-conviction court's determination was contrary to the manifest weight of the evidence.

We reverse.

Defendant's post-conviction petition alleged he received ineffective assistance of counsel and, as a result, his right to a jury trial was compromised. Kenneth Blan, defendant's trial counsel, attached an affidavit to the petition. Blan stated defendant's decisions to waive a jury trial and refrain from testifying were based upon erroneous advice of counsel.

The facts relevant to the underlying offense are set forth in detail in *People v. Ramsey* (1986), 147 Ill. App. 3d 1084, 496 N.E.2d 1054. They will, therefore, be repeated here only as necessary to an understanding of our disposition.

Complainant testified Dwayne Ramsey and defendant forced her into defendant's vehicle, which was parked on a street near her home. She had previously dated Ramsey. Kim Poke was also in the car. During the journey, which lasted 10 to 15 minutes, she was lying facedown on the back seat of the vehicle. Defendant drove the car. Complainant did not know precisely where the vehicle stopped. After the vehicle stopped, Ramsey and defendant had sexual intercourse with her against her will. Poke was unable to penetrate her vagina due to her struggles. Ramsey threatened to kill her.

Complainant was lying down during the return trip. They let her out of the car on Johnson Street in Danville. The assistant State's At-

torney asked complainant whether all of the events happened in Vermilion County. Each defense counsel objected to the question. The court sustained the objection. Complainant stated it took 10 minutes for them to return to Johnson Street after the rape. After she was initially put in the car, they went up an alley to the right side of the car. They stopped in a field where she could see lights from the back window.

Complainant testified that the car traveled on Bowman Street and turned onto Johnson Street during the return trip. She was not sure which street the car was on before it turned onto Bowman Street. The prosecutor argued that he should be allowed to continue questioning complainant about the location of the offense through leading questions. He maintained the prosecution was surprised by the trial testimony since previously complainant had indicated that the offense occurred in Vermilion County. He acknowledged that complainant was not certain of the precise location of the offense. Each defense counsel indicated that no surprise existed because the police reports indicated complainant was uncertain about the location of the offense. The court allowed further questioning. Complainant stated streets and directions of travel. The State then presented several other witnesses.

After the State rested, defendant, Ramsey, and Poke each made a motion for directed verdict of acquittal. Blan adopted the codefendants' argument. The other attorneys argued the State failed to establish the location of the offense beyond a reasonable doubt. They noted the victim could not identify the location of the offense, repeatedly said she did not see where they drove, and only in response to leading questions stated streets. They also argued that if her initial description of the route and the time of travel were correct, the offense could have occurred outside Vermilion County. Poke's attorney noted a case on point. The trial court took judicial notice of the State and county boundaries and stated that venue had been established with sufficient certainty to withstand the motion.

Defendant, Ramsey, and Poke did not present any evidence. The trial court found they were guilty and specifically noted that it found complainant's testimony clear, convincing, and corroborated. On October 18, 1985, defendant, Ramsey, and Poke argued their post-trial motions, concentrating on the venue issue. Blan argued the motion for all of the trial defendants. The motion raised the location of the offense as an issue. Blan first noted complainant stated she did not know where the vehicle stopped. Blan argued the court should take judicial notice that a 10- to 15-minute drive could take the vehicle out of the State and out of the county. He then argued a higher standard

of proof is necessary to establish venue, referring to *People v. Biella* (1940), 374 Ill. 87, 28 N.E.2d 111. Blan also referred the court to several cases and argued that in those cases the location of the offense had been established because of specific reference points. Blan also distinguished *People v. Frank* (1981), 98 Ill. App. 3d 388, 424 N.E.2d 799, because it involved the death of a victim which occurred in the county of the trial.

Finally, Blan argued *People v. Barksdale* (1974), 24 Ill. App. 3d 489, 321 N.E.2d 489, and *People v. Taylor* (1970), 121 Ill. App. 2d 403, 257 N.E.2d 524, *rev'd on other grounds* (1971), 48 Ill. 2d 91, 268 N.E.2d 865, were distinguishable. Blan noted *Barksdale* involved an allegation of aggravated kidnapping, an offense which occurred in Chicago. He also argued the court could have believed that the time necessary to travel outside of Cook County from the City of Chicago was greater than the time of travel stated by the complainants in those cases. He noted no other jurisdiction had followed the reasoning presented in those cases. Blan also argued the court should follow the rationale of *People v. McClain* (1978), 60 Ill. App. 3d 320, 376 N.E.2d 774, which he believed required more specific proof of venue. On November 25, 1985, the trial court denied the post-trial motions, stating it believed venue had been proved beyond a reasonable doubt. The court relied upon *Taylor* and *Barksdale*.

At the post-conviction hearing, defendant testified he hired Blan and put his faith in him. He and Blan discussed defendant's case, and defendant learned Blan was an experienced and well-qualified attorney. Defendant discussed a bench trial with Blan once or twice at Blan's office. They talked about the disadvantage of a jury trial in a situation where three men were accused of assaulting one woman. Blan and he talked about the trial court's experience in trying sexual assault cases. Defendant stated he could not remember discussing any other reason a jury trial might not be best.

Defendant stated that although he waived a jury trial after being advised by the court, it was actually Blan's decision. Defendant and Blan talked about defendant's alibi, but defendant did not think Blan told him it was not a good idea to exercise his right to a jury trial because of it. Defendant remembered discussing the fact that the State would have difficulty proving venue. Before the jury waiver, Blan told him it would be extremely hard for the State to prove where the offense had occurred. Defendant did not remember discussing the effect of this factor. However, Blan told him venue had to be proved beyond a reasonable doubt. Defendant further testified that none of the discussions played any part in his decision to waive a jury

trial. He just trusted Blan so it was Blan's decision, not his. Defendant admitted Blan mentioned that the experience of the judge, nature of the offense, and difficulty in proving the location of the offense all made it a good idea to take a bench trial.

Defendant testified further that Blan decided defendant should not testify. As soon as the State closed its case, Blan told him there was no need for him to testify as the State did not establish the location of the offense and the evidence was extremely weak. Defendant and Blan had not previously discussed his testifying. Defendant told Blan that the sexual conduct had occurred in Vermilion County. He also told Blan complainant had suggested engaging in sexual intercourse with him, Ramsey, and Poke. She consented to all of the activity. Defendant believed she was using drugs. He and Ramsey had a prior sexual relationship with complainant in 1983. Defendant was not dating her in 1985.

The post-conviction court took judicial notice of defendant's initial statement to the police. Defendant had told officers that he was home all day and that Herb Pettway would confirm this. Defendant stated Ramsey had borrowed his car at 4 p.m. and returned it. Ramsey borrowed the car again at 7 or 7:30 p.m. and returned it. Defendant stated he had not seen Poke on April 2, 1985. The police reports also indicate that Pettway could not confirm defendant's presence in the house after 3 p.m. on April 2, 1985.

On cross-examination, defendant testified that he and Blan talked twice prior to the jury waiver. They discussed his version of the incident, defenses he could raise, and the choice of a jury or bench trial. Defendant agreed that he told the trial court the decision to waive a jury trial was his. Blan told defendant he had a right to testify. Defendant knew he could take the stand and tell his side.

Blan stated he had been licensed to practice law in 1972. Seventy-five to eighty percent of his practice involved litigation. Approximately 10% of the litigation involved criminal defense. He had worked as an assistant public defender and had defended criminal sexual assault cases in jury and bench settings. Blan discussed defendant's case with him prior to, during, and after trial. Blan could not remember specific points of defendant's statements to him. He thought the statements were generally consistent with defendant's post-conviction testimony.

Blan stated he and defendant discussed the difficulty presented by defendant's alibi and the fact the police had discovered it was false. Prior to trial, he and the other attorneys developed a strategy which focused on the difficulty of proving the location of the offense. Blan

felt the victim's statements were insufficient to establish the scene of the occurrence. He also believed the State could not reconstruct the travel route based upon complainant's perception of the movement of the vehicle. Blan discussed the location of the offense with defendant before the jury waiver. He and the other defense attorneys believed the assistant State's Attorney did not realize a venue problem existed. Blan felt it would be easier during a bench trial for the judge to dismiss on a technical matter. He also believed he could conduct a more vigorous examination of the victim without a jury. Defendant never voiced any disagreement with Blan's recommendation that he waive a jury trial.

Blan further testified that defendant's testimony at trial was an open issue. If defendant testified, he would have compromised the effective use of the venue defense. Blan stated it was clear to him that defendant should not testify in his own behalf. However, he thought a bench trial was a good idea, because defendant's prior false statement to the police would be less important to a trial judge than a jury, should defendant testify. He recommended defendant not testify because he believed the location of the offense had not been proved, and defendant followed the recommendation. Blan told defendant he had a right to a jury trial and a right to testify in his own behalf.

The post-conviction court found the defense counsel's advice was erroneous and based upon a misapprehension of the law. It concluded the evidence established actual incompetence of trial counsel and substantial prejudice to defendant.

■■ ■ In *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, the Court stated the purpose of the constitutional requirement of effective assistance of counsel is to ensure a fair trial. The benchmark for assessing ineffective assistance claims is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. The *Strickland* Court stated a two-part test for determining ineffective assistance of counsel. First, defendant must show counsel's performance was actually deficient; and second, defendant must show the deficiency prejudiced the defense. 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; *People v. Wright* (1986), 111 Ill. 2d 18, 488 N.E.2d 973; *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.

■ A defendant is entitled to competent, not perfect, representation. The determination of whether counsel's assistance was ineffective must be made in light of all of the circumstances of the case. The *Strickland* Court noted that every effort should be made to eliminate

the distorting effect of hind-sight. (*Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.) The *Strickland* Court also stated a strong presumption exists that counsel's conduct, if it involves strategy, falls within reasonable professional judgment. Thus, a review of counsel's competency usually does not extend to the exercise of his judgment, discretion, or trial tactics. *People v. Spicer* (1987), 158 Ill. App. 3d 699, 511 N.E.2d 235; *People v. Chitwood* (1986), 148 Ill. App. 3d 730, 499 N.E.2d 992.

The fact that one defense counsel may have pursued the defense of the cause under a different theory does not automatically render trial counsel's performance ineffective. (*Spicer*, 158 Ill. App. 3d 699, 511 N.E.2d 235; *People v. Jennings* (1986), 142 Ill. App. 3d 1014, 492 N.E.2d 600; *People v. Elder* (1979), 73 Ill. App. 3d 192, 391 N.E.2d 403.) However, where counsel's choice of trial strategy is based upon a misapprehension of the law, the claim is reviewable and his performance may in fact be ineffective. *People v. Wright* (1986), 111 Ill. 2d 18, 488 N.E.2d 973; *People v. Lee* (1989), 185 Ill. App. 3d 420, 541 N.E.2d 747.

If the issue of ineffective assistance of counsel can be resolved on the basis of lack of prejudice, it should be. (*Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069; *People v. Colley* (1988), 173 Ill. App. 3d 798, 528 N.E.2d 223.) A trial court's determination in post-conviction matters should only be reversed when it is contrary to the manifest weight of the evidence. *Wright*, 111 Ill. 2d 18, 488 N.E.2d 973.

The State argues Blan's advice was reasonable as based upon many strategic factors. The State also argues trial counsel's reliance on a failure to prove venue as a defense strategy was not unreasonable or evidence of a misapprehension of the law. Finally, the State argues defendant has not established prejudice. Defendant responds that trial counsel's advice was based upon counsel's misunderstanding of settled venue concepts and argues this court's approval of the trial court's reliance upon *Barksdale* and *Taylor* indicates Blan's misapplication of settled law. Defendant agrees that the application of the in-transit venue statute to the instant situation was unsettled at the time of trial.

Here, both defendant and Blan testified the decision to waive a jury trial was based in part upon the experience of the trial judge, the nature of the case, the ease of vigorously attacking complainant's credibility in a nonjury setting, the increased likelihood the trial judge in a bench trial would dismiss on a technical matter, and the probability that the defendant would not testify due to the effect of his false

alibi. Similarly, defendant's decision to refrain from testifying was based in part upon the likelihood of impeachment and trial counsel's belief that venue had not been proved. These factors are all strategic matters which may properly be considered by counsel in formulating his advice to defendant. Because the advice was based upon several strategic factors, it would not ordinarily be considered indicia of ineffective assistance of counsel.

However, Blan admitted that the trial strategy focused on his belief that the complainant could not testify to the location of the offense with sufficient certainty to establish venue beyond a reasonable doubt. He noted that his belief that the testimony was insufficient to establish the location of the offense was the primary reason he advised defendant not to testify. Therefore, if this advice was based on a misapprehension of the law, defendant should arguably be entitled to a new hearing. *Wright*, 111 Ill. 2d 18, 488 N.E.2d 973.

Contrary to defendant's assertion on appeal, the trial record supports a conclusion that Blan knew the location of the offense had to be proved beyond a reasonable doubt. He and the other attorneys vigorously argued that *Barksdale* and *Taylor* did not apply to an offense which occurred in a small town on a State border. *Barksdale* and *Taylor* involved kidnappings and sexual assaults where the victims were picked up in Chicago and driven to an area outside town. After the assaults they were returned to the city. (*People v. Barksdale* (1974), 24 Ill. App. 3d 489, 321 N.E.2d 489; *People v. Taylor* (1970), 121 Ill. App. 2d 403, 257 N.E.2d 524, *rev'd on other grounds* (1971), 48 Ill. 2d 91, 268 N.E.2d 865.) Those courts found venue sufficiently proved but provided no reasoning for the result.

Blan argued some specific proof of location by direction or marker testimony was needed, relying upon *People v. McClain* (1978), 60 Ill. App. 3d 320, 376 N.E.2d 774. In *McClain*, the victim of a sexual assault was abducted and blindfolded in Macon County. She was raped soon after the assailant stopped at the end of a dead-end, curved road. An officer testified the defendant stated the rape occurred close to Decatur. The officer then stated complainant's description matched roads around Lake Decatur. Blan also referred the court to *People v. Hayn* (1976), 34 Ill. App. 3d 1029, 341 N.E.2d 182. In *Hayn*, defendant was abducted and raped. However, both she and a codefendant provided specific descriptions of the direction of travel and the types of roads taken. Blan also argued the in-transit venue provisions were inapplicable because the journey had stopped at the time of the assault and no kidnapping or continuous offense charge had been made.

Thus, the record supports a finding that Blan knew the status of

the applicable law. The post-conviction court's finding of a misapprehension of the law is contrary to the weight of the evidence. Blan's error was in assessing the quantum of evidence necessary to establish venue. However, this type of error does not support a finding of ineffective assistance of counsel.

For the above reasons, we reverse the post-conviction court.

Reversed.

SPITZ and GREEN, JJ., concur.