THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM KRAMER, Defendant-Appellant.

First District (2nd Division)    No. 1—95—0208

Opinion filed March 26, 1996.

964

DiVITO, J., dissenting.

Epstein, Zaideman & Esrig, P.C., of Chicago (James R. Epstein and Elizabeth A. Kaveny, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James S. Beligratis and Gregory E. Ahern, Jr., Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

On June 20, 1993, William Kramer (defendant) and Seth Dahm, were travelling in a Chevrolet Blazer owned by defendant's parents. A high-speed chase of the Blazer by police officers ended in a collision killing Dahm and injuring defendant.

The Blazer was first observed travelling north on Indianapolis Boulevard at "an extremely high rate of speed" by East Chicago police officer Lopez. While he attempted to curb the vehicle, it "ran" between 10 and 12 red lights and continued to pick up speed until it was travelling at a rate of "at least a hundred miles an hour."

After being ordered to terminate his pursuit and to allow Whiting police officers to take over, Lopez continued north, and while looking for a place to turn around, he saw that the Blazer had overturned and was on fire. Both occupants were on the ground but he was unable to tell which of them had been the driver.

Whiting police officer Semancik was on Indianapolis Boulevard when he received a dispatch that a vehicle was being pursued in his direction. He saw the Blazer pass by at a high rate of speed, but was unable to observe anything inside the vehicle. He began pursuit, allowing Whiting police officer Trojnar to proceed ahead of him. Semancik estimated that the Blazer was travelling at "well over a hundred miles an hour" as it continued through Hammond into Chicago.

As Semancik slowed down, looking for a place to turn around, he saw two men (Chavez and Jiminez) signalling for him to stop. They told him that there was an accident under the Skyway, and after proceeding to the vacant lot they had indicated, Semancik saw the Blazer lying on its side and someone lying on the ground. He radioed for emergency help and found that the individual, later identified as defendant, had a pulse and was breathing, but unconscious and

"pretty messed up." Trojnar arrived next and began putting out the fire.

Trojnar testified that upon being radioed that a vehicle was entering the city limits at a high rate of speed, she went down a side street to Indianapolis Boulevard and waited, looking south. As she saw the Blazer approach, she kept her eyes on the vehicle and was able to see that there were two occupants. When the Blazer was only 5 to 10 feet away, she observed that the passenger had a long, blond ponytail (Dahm had long blond hair; defendant has dark hair.) She estimated that the Blazer was travelling at over 90 miles an hour.

As the vehicle passed her and continued north on Indianapolis, Trojnar began pursuit. She was forced to slow down, however, upon encountering another vehicle in her lane, and Semancik passed her. After losing sight of the Blazer and Semancik, she began to turn around, when "an unknown vehicle" pointed for her to continue north on Indianapolis. Looking for Semancik, she followed an individual pointing into a vacant lot and saw the Blazer lying on its side.

Upon seeing that the Blazer had caught fire and that Semancik was rendering aid to one of the occupants, Trojnar extinguished the fire and began looking for the other occupant. She found an individual with blond hair in a ponytail, who she determined to be the passenger of the vehicle, located near a pillar of the Skyway. She admitted at trial that although the accident occurred on June 20, 1993, she did not tell anyone about seeing the blond ponytail until one month prior to the May 1994 trial, after being told that there was a problem of identification in this case.

Jiminez testified that he was stopped at a red light, with Chavez and his brother as passengers, when a "speeding truck" went by. The truck passed within two feet of Jiminez's car, and he claimed to have seen a heavyset passenger hanging onto the dashboard. The truck then crashed through a fence and a tree and turned over. Jiminez and Chavez went to the vacant lot where the truck had crashed and found one man without a pulse and another man screaming "my head, my head."

Police officers on the scene had told Jiminez and Chavez that they were attempting to determine which occupant had been the driver, and when they questioned him about "the violator," Jiminez stated that he was wearing a white tee shirt, admitted that he could not identify the driver, but indicated that the man who had been found near the cement pillar was the passenger. Chavez told the officers that he had not been able to observe anyone when the Blazer passed by him.

Both Trojnar and Jiminez were cross-examined regarding the cir-

cumstances affecting their ability to observe the passenger of the speeding Blazer and their failure to report their observations at the time of the accident. Chavez testified that he was in the back seat when the vehicle came "flying from the left side," causing Jiminez to slam on the brakes; that after seeing the Blazer crash and explode, he and Jiminez ran to the scene; and that he had not been able to observe anyone when the Blazer passed by him.

At trial, defense counsel attempted several times to ask Chavez about any conversations he had had with Jiminez regarding his observation of the occupants of the Blazer. After sustaining the State's objections, the court stated: "[W]hat I'm looking for, to be perfectly frank, *** is any questioning of Mr. Jiminez regarding any conversation between he [sic] and/or the witness, and I don't see any. So most respectfully, the objection will be sustained."

At the conclusion of defendant's bench trial, the judge found him guilty of reckless homicide. Defendant moved for a new trial, arguing that he was denied effective assistance of counsel because his attorney failed to bring up a prior inconsistent statement made by Jiminez. Counsel was permitted to make a post-trial offer of proof that Jiminez had previously told Chavez that he did not, in fact, observe either occupant of the Blazer as it passed him, but instead decided to "hang" it on "the guy who lived." Defendant further charged that his counsel failed to have a "human factors" expert perform tests which would have enabled him to give testimony discrediting the eyewitnesses' trial identifications. Defendant concluded his motion for a new trial with the assertion that he was convicted despite the existence of a reasonable doubt of his guilt.

In denying defendant's motion, the court sentenced him to 30 months' probation, prohibiting him from driving during that period, plus 300 hours of community service, and six months' confinement, to be served in his room when he was not attending classes. Defendant appeals his conviction and sentence, advancing the same assignments of error urged in his motion for a new trial.

Defendant first contends that he was denied effective assistance of trial counsel (1) because his attorney failed to impeach Jiminez's identification of Dahm as the Blazer's passenger, and (2) because counsel failed to contact and present a "human factors" expert who would have conducted tests and given his opinion discrediting the eyewitness identifications made by Jiminez and Trojnar.

■ To establish that he was denied effective assistance of counsel, defendant must show "(1) that his counsel made errors so serious, and his performance was so deficient, that he was not functioning as the counsel guaranteed the defendant by the sixth amendment to the

United States Constitution, and (2) that these deficiencies so prejudiced the defendant as to deprive him of a fair trial, a trial whose result is reliable." *People v. Caballero*, 126 Ill. 2d 248, 259-60, 533 N.E.2d 1089 (1989), citing *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Defendant must overcome a strong presumption, however, that counsel's conduct was reasonable and that his actions constituted sound trial strategy. *Strickland v. Washington*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065, *reh'g denied*, 467 U.S. 1267, 82 L. Ed. 2d 864, 104 S. Ct. 3562 (1984). Defendant cannot use the benefit of hindsight to second-guess counsel's exercise of judgment, discretion, or trial tactics. *People v. Cunningham*, 191 Ill. App. 3d 332, 547 N.E.2d 765 (1989), *appeal denied*, 131 Ill. 2d 561, 553 N.E.2d 398 (1990).

To establish prejudice, defendant must show that there is a "reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068-69. Further, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *** If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *People v. Albanese*, 104 Ill. 2d 504, 527, 473 N.E.2d 1246 (1984), *cert. denied*, 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061 (1985), *reh'g denied*, 472 U.S. 1013, 86 L. Ed. 2d 730, 105 S. Ct. 2715 (1985).

■ The first deficiency of trial counsel which defendant claims constituted ineffective assistance was his failure to impeach Jiminez with a prior inconsistent statement, alleged to have been made to Chavez, that he did not, in fact, observe the passenger of the Blazer as it sped past him, but instead, merely decided to blame the accident on "the guy that lived." Defendant relies on *People v. Garza*, 180 Ill. App. 3d 263, 535 N.E.2d 968 (1989), *appeal denied*, 127 Ill. 2d 626, 545 N.E.2d 119 (1989), and *People v. Lee*, 185 Ill. App. 3d 420, 541 N.E.2d 747 (1989), both of which hold that trial counsel who had failed to confront witnesses with prior inconsistent statements had been ineffective.

In both those cases, however, trial counsel made numerous errors in addition to those having to do with impeachment. See *Garza*, 180 Ill. App. 3d 263, 535 N.E.2d 968 (finding that trial counsel not only failed to question the sole eyewitness about a different version of the incident she recounted to another person who was not allowed to testify, but that the attorney also failed to inform the jury of the inconsistencies in the sole witness' description of the murderer; failed

to submit the photographs of two men who were selected by the eyewitness from a mug book; failed to call witnesses who could corroborate the defendant's alibi testimony; and failed to call other available defense witnesses); *Lee*, 185 Ill. App. 3d 420, 541 N.E.2d 747 (finding that trial counsel not only failed to impeach a witness with prior inconsistent statements, but that he also failed to properly investigate the prior mental deficiencies of the State's chief witness or request a hearing on his competency; failed to call a psychologist who had evaluated that witness and who would have testified that the witness had the mental capacity of a minor child and was easily led in testimony; bolstered the credibility of that same witness by proving his prior consistent statements on cross-examination; failed to use evidence that a witness had been granted immunity in federal court proceedings; failed to make a meaningful opening statement; failed to furnish defendant a copy of her own prior statement; and failed to prepare the defendant before calling her to testify). We recite this litany of professional deficiencies only because defendant claims that the facts in his case "are even more compelling than those in *Garza* and *Lee*," and that the ineffectiveness of his counsel was "even more profound than in *Lee*." Merely to catalogue the *Garza* and *Lee* instances of ineffectiveness, however, is to underscore defendant's lack of apprehension of the differences between the cases he relies upon and his own.

Although trial counsel's failure to first confront Jiminez with his alleged prior inconsistent statement precluded him from eliciting the allegedly impeaching statement from Chavez, he otherwise thoroughly cross-examined Jiminez about his identification of Dahm as the passenger of the speeding Blazer, which included interrogation regarding the approximate speed of the passing Blazer, the lighting conditions at the time of his observation, the distance between the two vehicles, the period of time during which the Blazer was in his field of vision, his efforts to avoid being hit by the Blazer, and his alcohol consumption earlier that evening. Jiminez was also forced to admit that he had not told the police officers on the scene that the passenger holding onto the dashboard was heavyset.

In light of such cross-examination, trial counsel's failure to elicit Jiminez's alleged prior inconsistent statement does not constitute the sort of error that would deprive defendant of his constitutional right to effective assistance of counsel. Moreover, Trojnar's identification of Dahm as the passenger and the fact that the Blazer was owned by defendant's parents, when added to counsel's rigorous cross-examination of Jiminez, clearly indicate that the trial judge would not have reached a different result, even had he heard Jiminez's al-

legedly inconsistent statement. See *People v. Moore*, 264 Ill. App. 3d 901, 910, 637 N.E.2d 1115 (1994) (finding that defendant suffered no prejudice when trial counsel failed to impeach eyewitnesses with prior inconsistent statements, but instead "vigorously challenged" their identifications on cross-examination), *appeal denied*, 158 Ill. 2d 579, 645 N.E.2d 1365 (1994); *United States v. McKinney*, 954 F.2d 471 (7th Cir. 1992) (finding that the defendant did not suffer prejudice where defense counsel failed to bring out a witness' prior statement that he had lied, but instead challenged his credibility through cross-examination). Accordingly, we conclude that defendant was not deprived of his right to effective assistance by his counsel's failure on this aspect of the case.

Defendant next alleges that trial counsel's failure to contact Dr. Rudolph M. Mortimer, a "human factors" expert, in order to have him conduct tests and to call him as an expert witness at trial constituted ineffective assistance of counsel. He further maintains that counsel was informed that defendant was willing to pay Mortimer for his services and that the tests, which defendant had Mortimer conduct subsequent to his trial, would have led Mortimer to testify, if he had been called as a witness, that it was his opinion that "some of Trojnar's and Jiminez's claimed observations were impossible, others highly improbable."

The State claims that Mortimer's testimony would not have been admissible at trial because he would not have had the training or expertise to enable him to render an opinion which would have aided the jury. See *People v. Jordan*, 103 Ill. 2d 192, 208, 469 N.E.2d 569, 576 (1984). Defendant, however, cites cases admitting the expert testimony of Dr. Mortimer and that of another human factors expert. See *Brennan v. Wisconsin Central Limited*, 227 Ill. App. 3d 1070, 1088, 591 N.E.2d 494 (1992) (holding that the admission of Dr. Mortimer's testimony of experiments conducted to estimate "the points at which a reasonable driver would notice the headlight and horn of a train" was not an abuse of discretion), *appeal denied*, 146 Ill. 2d 623, 602 N.E.2d 447 (1992); *Poltrock v. Chicago & North Western Transportation Co.*, 151 Ill. App. 3d 250, 255, 502 N.E.2d 1200 (1987) (holding that testimony of "human factors" expert was not inadmissible where "the court [found it] to be of assistance to a jury in understanding complex issues"). We shall therefore assume, without deciding, that Dr. Mortimer's testimony would have been admissible at trial.

Here, again, defendant relies on cases holding defense counsel's ineffectiveness to be based upon multiple errors. See *People v. Garza*, 180 Ill. App. 3d 263, 535 N.E.2d 968 (1989); *People v. Tillman*, 226 Ill.

App. 3d 1, 589 N.E.2d 587 (1991), *appeal denied*, 146 Ill. 2d 648, 602 N.E.2d 472 (1992); *People v. Gunartt*, 218 Ill. App. 3d 752, 578 N.E.2d 1081 (1991), *appeal denied*, 142 Ill. 2d 659, 584 N.E.2d 134 (1991). We are constrained to repeat, at the risk of appearing to be didactic, that these cases present far greater deficiencies on the part of trial counsel than those alleged in this case; they therefore fail to persuade that defense counsel's failure to pursue the potential testimony of Mortimer constitutes ineffective assistance.

In *People v. Mehlberg*, 249 Ill. App. 3d 499, 618 N.E.2d 1168 (1993), *appeal denied*, 153 Ill. 2d 566, 624 N.E.2d 813 (1993), where DNA evidence was "the key to the State's evidence" against defendant in an aggravated criminal sexual assault prosecution, it was held that defense counsel's failure to call a DNA expert did not constitute ineffective assistance where he cross-examined the State's experts and challenged the evidence in his closing argument. Such tactics were considered "within the wide range of reasonable professional conduct." *Mehlberg*, 249 Ill. App. 3d at 546.

Defendant attempts to distinguish *Mehlberg* by asserting that in that case, counsel's decision not to call the expert was strategic, whereas in this case, since defendant's attorney did not contact Mortimer, his actions could only have constituted a failure to investigate. However, we are of the opinion that defense counsel's decision to challenge the credibility of the eyewitnesses' ability to observe the occupants of the speeding Blazer through the traditional methods of cross-examination and argument without resort to expert testimony was, in this case, within the wide range of reasonable professional conduct.

■ Defense counsel thoroughly cross-examined both eyewitnesses regarding the circumstances affecting their ability to observe the passenger in the Blazer. Trojnar was asked to give her estimate of the speed of the passing Blazer; the lighting conditions at the time of her observations; the distance between the two vehicles; the period of time during which the Blazer was in her field of vision; and her efforts to activate her emergency equipment and read the Blazer's license plate. He was also able to have her admit that she did not record her observation of the blond ponytail in her police report and that she did not tell anyone about that observation until she was told by the State that there was a problem of identification in this case. As we have previously noted, Jiminez was similarly cross-examined.

Considering trial counsel's highly creditable cross-examination of the witnesses and his argument attacking whether they actually made the observations they claimed, we cannot agree that his failure to contact Mortimer and to present "human factors" expert testimony at trial constitutes ineffective assistance of counsel.

972

■ Furthermore, after defense counsel made an offer of proof of Jiminez's alleged prior inconsistent statement and the proposed testimony of Mortimer during the proceedings conducted on defendant's motion for a new trial, the judge commented: "[C]onsidering [this evidence] in its totality, it's the Court's view that that does not establish ineffective assistance of counsel [ ] according to the guidelines as set forth in Strickland." Consequently, since the judge implicitly ruled that he would still have found defendant guilty, even had this proffered evidence been admitted at trial, we believe that defendant suffered no prejudice as a result of the alleged errors of trial counsel.

Defendant's final complaint is that reasonable doubt of his guilt exists where the identification testimony implicating him is highly suspect. However, it is not our role to retry defendant when considering his challenge to the sufficiency of the evidence. *People v. Jimerson*, 127 Ill. 2d 12, 43, 535 N.E.2d 889 (1989), *cert. denied*, 497 U.S. 1031, 111 L. Ed. 2d 796, 110 S. Ct. 3288 (1990). Instead, we are bound by the standard of review that requires us to affirm his conviction if the evidence, viewed in the light most favorable to the prosecution, could lead any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *People v. Sutherland*, 155 Ill. 2d 1, 17, 610 N.E.2d 1, 8 (1992), *cert. denied*, 510 U.S. 858, 126 L. Ed. 2d 130, 114 S. Ct. 170 (1993).

■ In this case, Dahm was identified by two thoroughly cross-examined witnesses as the passenger of the Blazer, thus necessitating the inference that defendant was the driver; and when we further consider the undisputed evidence that the Blazer was owned by defendant's parents, from which the court could make the additional reasonable inference that he was the driver, we do not find the evidence "so improbable or unsatisfactory" as to require reversal of defendant's conviction. See *Jimerson*, 127 Ill. 2d at 43. All the evidence, when viewed in the light most favorable to the prosecution, supports defendant's conviction.

For all of the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.

BURKE, J., concurs.

JUSTICE DiVITO, dissenting:

Because I believe that confidence in the reliability of the result of this trial has been tarnished by ineffective lawyering, I respectfully dissent.

First, I agree with the majority that ineffectiveness was not shown by counsel's tactical decision to forgo calling an expert and, instead, to challenge the eyewitness testimony through traditional cross-examination. Because the difficulty of making observations under unexpected and fast-moving conditions is commonly known, the "helpfulness" of the expert testimony at issue here would have been of questionable value. See, *e.g.*, *Thacker v. UNR Industries, Inc.*, 151 Ill. 2d 343, 365 (1992) (expert testimony admissible when it assists in understanding evidence or in determining a fact in issue; "expert opinions on matters of common knowledge are not admissible unless the subject is difficult of comprehension or explanation").

On the other hand, with due regard for the majority's observation that Jiminez was vigorously cross-examined about many things and that his testimony was impeached in other areas, the fact remains that he was never confronted with questions most directly related to the credibility of his testimony. The unused impeachment was significant because the witness was Jiminez's friend, had no motive to lie, and would have provided persuasive evidence that Jiminez's testimony was an invention. This failure to impeach, moreover, was not a tactical decision. Defense counsel demonstrated his intention to introduce the impeaching evidence by his unsuccessful efforts to do so through Chavez, without first having laid a proper foundation by confronting Jiminez with his prior inconsistent statements. By so doing, counsel displayed his ignorance of a basic rule of evidence and thereby revealed his ineffectiveness.

The evidence here was by no means overwhelming. The weight of Officer Trojner's testimony was diminished by the fact that she never reported her observation, orally or in writing, until shortly before the trial, and only after she was told of an identification problem. The obvious difficulty of making an identification, even a partial one, under the circumstances present here further diminishes the weight of her testimony. If Jiminez's testimony had been successfully impeached and its weight thereby rendered questionable, one must wonder—notwithstanding the post-trial comments of the trial court that ineffective assistance of counsel as set forth in *Strickland* had not been satisfied—whether Officer Trojner's testimony would have been sufficient to convict.

Although I believe that the trial court's statement at the post-trial hearing can be read, as the majority states, as an implicit statement that a successful impeachment of Jiminez would not have affected the outcome, I have a lingering doubt as to whether effective lawyering would have made a difference here. Because I believe that there is a reasonable probability that the result of defendant's trial

would have been different had Jiminez been impeached with his prior inconsistent statements, this conviction should be reversed and the case should be remanded for a new trial.